362 P.2d 515

Jose N. ROMERO, Administrator of the Estate of Emilio Herrera, Estella Herrera and Flora Herrera, all deceased; and Frank Herrera, Administrator of the Estate of Locaida Herrera, deceased, Plaintiffs-Appellants,

v.

Earl TURNELL and Central Casualty Company, a Corporation, Defendants-Appellees.

No. 6658.

Supreme Court of New Mexico.

May 2, 1961.

Rehearing Denied June 21, 1961.

Bigbee & Stephenson, Santiago E. Campos, Santa Fe, for appellants.

Gilbert, White & Gilbert, Santa Fe, for appellees.

ROBERT W. REIDY, District Judge.

This action arises from a fatal accident that occurred on the highway between Pojoaque and Espanola, New Mexico. Four persons, all the occupants of a passenger car, were killed when the car collided with a house that was being moved along the highway by truck and trailer operated by the employee of the defendant Turnell. Suit was instituted by the ad-

ministrators of the estates of the four decedents, three adults and one child. Substantial verdicts were given by the jury for each estate. Then the defendants filed motions for judgments notwithstanding the verdicts and, in the alternative, for a new trial. The trial judge entered an order granting the motions for judgments notwithstanding the verdicts and, in the alternative, should this court reverse that order, then granting a new trial. Thereafter judgment was entered for the defendants notwithstanding the verdicts and the plaintiffs have appealed to this court from that final judgment.

The appellants make their argument here under two points. Point One, that under the evidence, judgments for the defendants should not have been granted and that the verdicts of the jury should be reinstated and judgment granted the plaintiffs. Point Two, that the trial court abused its discretion when it ordered a new trial in the event this court reversed the judgments notwithstanding the verdicts.

The evidence discloses the following facts surrounding the fatal collision: The defendant, Earl Turnell, has been for many years in the business of house moving, and on the day in question his employee, Roediger, was moving a house from Pojoaque to Espanola. Prior to the incident the defendant had obtained a permit from the State Highway Commission to transport the house upon the highway, and a state police officer escorted the truck and house, some distance in front of it.

The highway, at the point of the collision, was paved. The main traveled portion was 26 feet wide, or 13 feet in each lane. There was an additional 6 feet of paved strip on each side of the highway. The house that was being moved was 24 feet 7 inches wide and 30 feet 6 inches long. It appears that the house was loaded by being placed on two steel beams which were parallel and were located some 5 feet from each edge of the house. Another steel beam was placed across the front of the house and then this beam was attached to the truck by a pin that sits on the fifth wheel of the truck. The parallel beams were attached to dollies, four small wheels on each side.

Emilie Herrera, one of the decedents, was driving the passenger car and was proceeding south at the time of the accident, and the truck and house were proceeding north. It was broad daylight and about ten o'clock in the morning.

The state police escort was preceding the house by about six hundred yards and his car was astraddle the center line of the highway. He had on his emergency equipment which consisted of a red flashing light on the top of his car, and he also had his headlights burning. As vehicles approached the police car he would wave them to the side of the highway with his left arm.

The highway at this point was comparatively straight and it was unobstructed for nine-tenths of a mile.

There were three vehicles proceeding toward the south; first, a forty-one passenger Trailways bus; second, a truck and attached lowboy trailer driven by a Mr. Ortega; and third, the passenger car driven by Emilio Herrera. As the truck and house proceeded north, the state policeman, in the manner set forth above, cautioned the Trailways bus to its right side of the road. This bus passed the truck and house and then came to a stop after the accident. The truck and lowboy operated by Ortega was cautioned to the side and pulled off onto the shoulder of the highway and stopped. He was in this position when the accident happened.

The Herrera car came seconds behind the Ortega truck and lowboy and was signaled by the police officer to pull over to the right. When it was apparent to the officer that the car was not going to do so, he even sounded his siren, in addition to the other equipment he was using as set forth above.

The Ortega truck and lowboy had come to a stop along the right, or west side of the road, and the decedent's car went off the paved portion of the highway behind the Ortega truck, then turned back onto the highway proper. It passed the Ortega truck, turned again onto the unpaved portion of the highway, then back onto the highway and struck the corner of the house that was going north. The impact killed all four members in the passenger car. It was apparent that at no time did Mr. Herrera apply his brakes or lessen the speed of his vehicle.

Appellants point out that Efram Martinez who was following the truck and trailer testified that Mr. Roediger was traveling from 30 to 35 miles an hour. He did so state on direct examination. The appellants also point out the fact that the house was across the center line from 3 to 5 feet. An examination of the record shows that it could not have been more than three feet. This would leave a space of ten feet, plus the six foot shoulder, for cars traveling south to pass the truck and house.

 It is true, as pointed out by the appellants, that all the authorities support the proposition that a judgment notwithstanding the verdict should not be granted except where it is most clear that the evidence or any inference therefrom does not present an issue for the jury. As was said in Terry v. Bisswell, 64 N.M. 153, 326 P.2d 89, 93:

> "When the trial court is passing upon a motion for judgment notwithstanding the verdict, the party favored is entitled to have the evidence viewed in the light most favorable to him and is entitled to every inference of fact fairly deducible from the evidence."

However, there is another proposition ·equally· as authoritative and one ·which the appellants herein ·cannot overcome. As stated in 32 C.J.S. Evidence § 1040:

"As a general rule, a party is bound by uncontradicted evidence produced by him to prove a particular fact or facts; and where he introduces a witness to testify on his behalf he ordinarily vouches for the credibility of his testimony, and, in the absence of contradictory evidence, is bound by such testimony, although the testimony was objected to by the adverse party. In accordance with this rule, a party who has introduced certain evidence cannot subsequently object that it should not have been received, or that it should not be given such consideration as its natural probative value entitled it to."

Every eye witness to· the accident was called to the stand by the appellants and they are bound by this uncontradicted testimony.

The state policeman testified as follows:

A. " * * * I tried to wave him over and of course, I don't know, I was probably just watching to see if he would slow down or move off the road. Looking in the rear view mirror of my car I saw this car swing off the highway behind a truck that had pulled off the road waiting for this house to come by, and then I saw the car pull out again behind the truck and pass the truck and swerve to the right in front of the truck, and then it looked like he lost control of the car and it kind of went sideways like it was going directly into the truck that was pulling the house. Then for a moment it seemed to straighten out and then it went directly under the corner of the house."

Mr. Ortega, the driver of the lowboy, testified the passenger car driven by Herrera almost ran into the officer's car.

Mr. Roediger, the defendant's driver, was also called as a witness by the plaintiff. He testified in part as follows:

"Q. Did you explain your answer that you could have, that after you saw the car was in trouble, all you could have moved was one and a half feet? What did you mean by that? A. At the instant I seen it was going to hit, it happened so quick I don't see that I could have moved it more than a foot and a half to the side or to the front.

"Q. Was that when he went off the highway in front of the lowboy or when he came up behind the lowboy or when he was right there in front of you? What instant are you speaking of? A. After he had gone around

the lowboy and went back on the shoulder of the road, it looked like he was going right on by, and that quick (The witness snapped his finger) he was right on me. I didn't have time for nothing.

"Q. You didn't notice any diminishing of speed prior to that? A. No, sir.

"Q. His speed was constant throughout? A. Yes, sir.

"Mr. Campos. That's all."

 The defendant's truck driver was not bound to anticipate the decedent's negligence in this situation until it reasonably should have been clear to him that the Chevrolet was not going to obey the law. Turrietta v. Wyche, 54 N.M. 5, 212 P.2d 1041, 15 A.L.R.2d 407.

A careful examination of the record does not disclose any negligence whatsoever upon the part of the driver of the defendant's truck. He did not occupy any greater portion of the highway than was reasonable under the circumstances. His speed had absolutely nothing to do with the collision. The sole proximate cause of this accident was the negligence of Emilio Herrera, and we so find as a matter of law.

The trial court was correct in his ruling, and it is hereby affirmed. Having disposed of the first point raised by the appellants,

it will not be necessary to concern ourselves with the second.

It is so ordered.

COMPTON, C. J., and CHAVEZ and MOISE, JJ., concur.

CARMODY, J., not participating.