639 P.2d 1190

**Deral Lee BOOKOUT,
Plaintiff-Appellant,**

v.

**Travis GRIFFIN, G. L. Wiley and Albany Medical College of Union University, Erwin Schleicher and Gerhard Nohynek, Defendants-Appellees.**

No. 13704.

Supreme Court of New Mexico.

Jan. 13, 1982.

Rehearing Denied Feb. 5, 1982.

Anthony F. Avallone, Las Cruces, for plaintiff-appellant.

Wayne A. Jordon, Alamogordo, for defendants-appellees.

## OPINION

FEDERICI, Justice.

This is an appeal from the District Court in Otero County. Plaintiff (appellant) sought damages for libel, wrongful interference with contract, and conspiracy. Defendants, Dr. Schleicher and Mr. Nohynek, were never served with process. At the close of plaintiff's case, the court directed a verdict for defendant, Dr. Wiley. A directed verdict was also entered for all but the libel charge as to defendants (appellees), Dr. Griffin and Albany Medical College. The jury returned a verdict for plaintiff and awarded plaintiff $50,000 damages. The trial judge granted judgment notwithstanding the verdict, or in the alternative, a new trial. Plaintiff appeals.

As the Court of Appeals could not agree on a proposed opinion, this case has been certified to this Court pursuant to Section 34–5–14(C), N.M.S.A.1978 (Repl.Pamp. 1981).

## I.

We affirm the conclusions of the trial court in directing a verdict since there was no evidence presented to support appellant's theories of wrongful interference with contract and conspiracy.

The additional issue we discuss on appeal is whether the trial court erred in granting the judgment notwithstanding the verdict. We affirm the trial court.

## II.

The facts show that appellant, Mr. Bookout, was employed as a veterinarian technician by appellee, Albany Medical College, at its chimpanzee breeding colony located at Holloman Air Force Base. Appellee, Dr. Griffin, was acting director of the Holloman facility, and appellee, Dr. Wiley, was a clinical veterinarian working in Mr. Bookout's section at the time of the incident involved in this case. Dr. Schleicher and Mr. Nohynek were scientists from Germany who visited the Holloman facility together on August 26, 1975.

On the day following their visit, Dr. Schleicher and Mr. Nohynek wrote a letter addressed to, Dr. Rosenblum (director of out-of-state facilities for Albany Medical College), Mr. Jack Weaver (personnel manager at the Holloman facility), and Dr. Griffin (appellee). The letter notes that copies were to be sent to, Dr. Korte (head of the German research group in Germany which had an agreement with Albany Medical College regarding the use of the Holloman facility), Dr. Coulston (Dr. Griffin's supervisor, and director of the Albany Medical College units of which the Holloman facility was a part), and Mr. Murray (supervisor of the chimpanzee section of the Holloman facility and Mr. Bookout's immediate supervisor.

The letter was actually delivered to Dr. Griffin by Dr. Mueller (head of the group of German scientists working with Albany Medical College). The letter stated that during their visit, Mr. Bookout directed foul language at Dr. Schleicher and Mr. Nohynek, part of which referred, in crude terms, to Schleicher and Nohynek's nationality. The letter demanded a formal apology and requested that formal steps be taken to prevent similar incidents in the future.

Upon receipt of the letter, Dr. Griffin contacted Dr. Coulston, Dr. Wiley and Mr. Weaver. Following discussions with these parties, it was determined that Mr. Bookout should be discharged from his employment. Following that determination, Dr. Griffin contacted Mr. Murray and informed him of the decision.

Dr. Griffin testified that the incident regarding Dr. Schleicher and Mr. Nohynek was not an isolated one as discharge had been considered following an incident about a week prior to Mr. Bookout's actual firing. The incident involved a report by Mr. Bookout to Dr. Griffin that Mr. Bookout suspected certain parties in the chimpanzee section were doing surreptitious research on the chimpanzees, and said if he, Mr. Bookout, caught any such person responsible, either he would kill that person himself or would place that person in a cage with a male chimpanzee and assist him in killing that person. Mr. Bookout believed that hormones were being injected into the female chimpanzees, the effect of which he believed would be a drop in the number of chimpanzees born to the breeding lab. Dr. Griffin testified that he investigated the allegations but concluded that they were without substance, and noted that Mr. Bookout's prognostication regarding the decrease in births did not come to pass. Dr. Griffin also stated that he interpreted Mr. Bookout's threats to constitute a potentially dangerous situation.

Appellees introduced evidence that it was customary for Mr. Bookout to use coarse language and to speak in derrogatory terms about Germans. Mr. Bookout himself testified that he sometimes used salty language. Also introduced was an altercation between a police officer and Mr. Bookout which took place about five months prior to the incidents in this case wherein the police officer was bitten on the hand.

Mr. Bookout denied the allegations in the letter, and testified that there was proof regarding the alleged surreptitious research. He testified that special locks to

the chimpanzee section had been broken, that footprints appeared in powder which had been left around the chimpanzee area to determine whether anyone had been in the area during unauthorized periods, and that the behavior of some of the female chimpanzees had become noticeably more aggressive.

Mr. Bookout claims that Dr. Griffin and Dr. Wiley never attempted to investigate the truth of the allegations in the letter before deciding to discharge Mr. Bookout. Dr. Wiley testified he assumed the letter was true, while Dr. Griffin testified that he discussed the matter personally with Mr. Nohynek before concluding the allegations in the letter were accurate.

During the trial, appellant waived any claim for damages due to harm to his reputation, but claimed damages for lost earnings, emotional distress, and punitive damages. Appellant claims that the republication of the letter was the proximate cause of his discharge and his subsequent inability to find employment in the area of chimpanzee research. He argues that facilities such as that from which he was discharged are few in number, and once officials at these facilities discovered that Mr. Bookout had been fired from the Holloman facility, they were not willing to hire him. Mr. Bookout testified that he wept when he heard he was fired and that he suffered emotional distress for at least two years after losing his job.

Appellees claim a qualified privilege and contend that any emotional distress suffered by Mr. Bookout was due to being fired rather than to the contents of the letter.

### III.

■ Generally, a statement is considered defamatory if it has a tendency to render the party about whom it is published contemptible or ridiculous in public estimation, or expose him to public hatred or contempt, or hinder virtuous men from associating with him. *McGaw v. Webster*, 79 N.M. 104, 440 P.2d 296 (1968). Liability for defamation depends on publication. *Mar-*

*tinez v. Sears & Roebuck*, 81 N.M. 371, 467 P.2d 37 (1970).

■ There are a number of defenses to a charge of libel. *See generally*, W. Prosser, Law of Torts §§ 114–116 (4th ed. 1971). The primary defense involved in this case is that of qualified privilege. One form of qualified privilege exists where there is a good faith publication in the discharge of a public or private duty. *Mahona-Jojanto, Inc., N.S.L. v. Bank of New Mexico*, 79 N.M. 293, 442 P.2d 783 (1968). The privilege is abused if a person said to be privileged lacks the belief, or reasonable grounds to believe, the truth of the alleged defamation. *Id.*

### IV.

■ We conclude that Dr. Griffin had a qualified privilege to republish the letter at issue, and that the privilege was not abused by the republications which he made.

The record shows that any republications, when they amounted to such, and the decision to discharge Mr. Bookout, were done within the scope of Dr. Griffin's public duties. Also, Dr. Griffin acted reasonably under the circumstances. The record shows that the behavior attributed to Mr. Bookout in the letter was consistent with his conduct at other times.

As to the alleged harm resulting from publications to individuals beyond proper officials at the Holloman facility, proof in the record does not support appellant's claims. The record shows that Mr. Bookout made oral inquiries regarding the possibility of employment in out-of-state facilities similar to the Holloman facility, that he was informed there were no openings, and that two prospective employers knew from sources other than Mr. Bookout that he had been fired. Yet, the record is devoid of any showing that these possible employers knew of the letter or its contents or that the refusal of anyone to hire Mr. Bookout was in any way related to the contents of the letter.

Since there was no abuse of qualified privilege, appellant is not entitled to dam-

ages for emotional distress, or for lost earnings, or to punitive damages. The trial court was correct in entering judgment notwithstanding the verdict in this case.

█ Appellant contends that since the issue of sufficiency of the evidence to establish abuse of privilege was first presented during appellees' motion for judgment notwithstanding the verdict, that issue cannot now be raised on appeal. *See* N.M.R.Civ.P. 50(a), N.M.S.A.1978. Appellant's claim is without merit. We note that at the close of all the evidence, appellees moved for a directed verdict on the grounds that "there has been no evidence in this case establishing *legal cuase [sic] of damages to the plaintiff* as a result of any publication on behalf of Albany Medical College or Dr. Griffin." (Emphasis added.) We are of the opinion that this statement sufficiently alerted the trial court to the issue of qualified privilege and abuse thereof, which led to his subsequent and final order granting judgment N.O.V. in which the court stated:

> After reviewing all of the evidence in the light most favorable to the Plaintiff, there is neither evidence nor inference from which the jury could have found that the privilege, which the Court found to exist as a matter of law, was abused, nor could the jury have found that any publication of the documents by the Defendants proximately caused any damage to Plaintiff after Plaintiff waived damages to his general reputation.

█ Judgment notwithstanding the verdict is proper only when it can be said that there is neither evidence nor inference from which the jury could have arrived at the verdict. *Owen v. Burn Const. Co.*, 90 N.M. 297, 563 P.2d 91 (1977); *Romero v. Turnell*, 68 N.M. 362, 362 P.2d 515 (1961). Although it is true that judgments notwithstanding the verdict are not proper where there is substantial conflicting evidence, *Powell v. Lititz Mutual Insurance Company*, 419 F.2d 62 (5th Cir. 1969), and that the trial court must view the evidence in the light most favorable to the party resisting the motion, *Archuleta v. Johnston*, 83 N.M. 380, 492 P.2d 997 (Ct.App.), *cert. denied*, 83 N.M. 379, 492 P.2d 996 (1971), we believe that the only reasonable conclusion which could be

reached on the evidence presented in the instant case is that which was reached by the trial judge.

In addition to what has been said above, we are unable to detect from the record any improper motive on the part of Dr. Griffin when he published the letter or in the eventual discharge of Mr. Bookout. Mr. Bookout himself testified that he knew of no conspiratorial activities on the part of his supervisors to have him discharged. There is evidence that Mr. Bookout was involved in conflicts with some of his nonsupervisory associates, and that one of those associates was a good friend of Mr. Nohynek, but there is no evidence or inference that any of these associates took part in the decision to discharge Mr. Bookout.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

PAYNE and RIORDAN, JJ., concur.

EASLEY, C. J., dissents.

SOSA, Senior Justice, dissents and files an opinion.

SOSA, Senior Justice, dissenting.

I respectfully dissent.

Although the majority sets out the proper standard for granting a judgment notwithstanding the verdict, they have misapplied the standard. The majority has chosen to believe all of the evidence presented in favor of the appellees and disregard all of the evidence in favor of the appellant.

To determine whether the trial court properly granted the appellees a judgment notwithstanding the verdict, we must be mindful of the following legal principles:

(1) *Bookout* is entitled to have the testimony considered in a light most favorable to him;

(2) *Bookout* is entitled to every inference of fact fairly deducible from the evidence;

(3) *evidence favorable to Bookout*, together with inferences therefrom, are to be accepted as true;

(4) conflicts or contradictions in the testimony must be resolved in favor of *Bookout*;

(5) *the jury must*, under proper instruction, determine the weight and significance of each fact in evidence; and finally,

(6) there must be neither evidence nor inference from which *the jury* could have arrived at its verdict. *Leonard Motor Company, Inc. v. Roberts Corporation*, 85 N.M. 320, 512 P.2d 80 (1973).

The majority has applied these standards to the moving party in the motion for judgment N.O.V., not Bookout, who prevailed. This is error.

The following is the evidence in the record which supports the jury's verdict:

On August 27, 1975, Erwin Schleicher and Gerhard Nohynek went to visit the chimpanzee breeding colony at the Albany Medical College of Union University (College). They were approached by Bookout, who escorted them to his supervisor, Mr. Murray, in order to inquire whether they had been granted permission to tour the facilities. Mr. Murray confirmed that he had given them permission. However, the German visitors then left the premises. Neither one of the visiting Germans mentioned to Mr. Murray that Bookout had treated them in a rude manner.

The following day, Dr. Mueller delivered a letter to Dr. Griffin, which was signed by Dr. Schleicher and Mr. Nohynek.[1] The letter accused Bookout of directing opprobrious language toward them the day before. Although the letter noted that a copy was to be sent to Mr. Murray, he had to make a copy of the letter for himself.

After receiving the letter, Dr. Griffin called in his subordinate, Dr. Wiley (to whom the letter was *not* directed), to discuss the contents of the letter with him. Dr. Wiley testified that he assumed the letter to be true, and, at that point, he and Dr. Griffin decided to dismiss Bookout. In fact, Dr. Wiley testified that he suggested that the dismissal be written.

Dr. Wiley then took a copy of the letter to his office and telephoned Mr. Murray, Bookout's supervisor, to meet with him. When Mr. Murray arrived, Dr. Wiley handed the letter from the Germans to him and a letter signed by Dr. Wiley and Dr. Griffin, which stated, "I have been instructed by Dr. Coulston to dismiss you as of this date for your rudeness and insubordination to visiting scientists * * *." Although Dr. Griffin testified that he spoke with Dr. Coulston about the firing, Dr. Coulston informed Bookout that he did not know anything about the incident. Furthermore, Dr. Rosenblum later informed Bookout that Dr. Coulston's name was to have been taken off the dismissal letter.

Bookout was then called into Dr. Wiley's office. There, Mr. Murray showed Bookout the two letters and asked him for his tags and keys. No one, at any time, inquired of Bookout as to the truthfulness of the letter from the Germans, although Bookout denied its contents orally and in writing.

Mr. Murray, Bookout's immediate supervisor, testified that he was sympathetic to Bookout and his wife, who also worked at the College. He also testified that he would recommend Bookout for employment in spite of the letter from the Germans. Dr. Wiley testified that Bookout knew the animals very well and could perform procedures with them which many others could not, and, on that basis, he could have recommended Bookout for employment, until the incidents in August. In addition, a fellow employee who testified for the College stated that Bookout was a very good technician, knew his job and performed it well.

Bookout then testified about the decrease in his earnings and the emotional distress he suffered for a period of two years as a result of the firing.

Yet, the majority chooses to ignore this evidence and, instead, cull that evidence which, although disputed, favors the College and not the prevailing party, which is error.

The majority begins by noting that this was not an isolated incident; the College had considered firing Bookout due to a different incident a week before. The latter incident was an accusation by Bookout of surreptitious research at the College, and

---

1. The signatures were never verified at trial.

an allegation by Dr. Griffin that Bookout threatened to kill those who were conducting the surreptitious research. However, the majority ignores Dr. Wiley's testimony that there was some substance to Bookout's allegations, since the chimpanzees were not completely normal and ignored the fact that Bookout's supervisors allowed certain steps to investigate the allegations. With respect to the alleged threat by Bookout, the majority forgets that Bookout denied ever making any threats. It is not for us to weigh the evidence and determine credibility; fact finding is for the jury. *Worthey v. Sedillo Title Guaranty Inc.,* 85 N.M. 339, 512 P.2d 667 (1973). The jury who saw the witnesses' demeanor while on the stand chose to believe Bookout.

Next, Bookout's erroneous prognostication regarding a decrease in the birth rate of chimpanzees should be of no moment, since Bookout's error was not discovered until months after Bookout's dismissal and since he was not dismissed for this reason.

· The majority opinion, then, refers to evidence that Bookout used coarse language. I agree that this is in the record. However, Bookout's immediate supervisor characterized Bookout's language as that of anybody who gets excited and concludes that, although he and Bookout had a couple of "tiffs," they settled them in a "normal manner." Also in the record is salty language used by two witnesses for the College while testifying, and not as an echo of what Bookout may have said. Also significant to Bookout's usage of choice words is the fact that, although Dr. Griffin testified that he believed Bookout's behavior to be consistent with the contents of the letter, he also testified that he did not know whether Dr. Schleicher speaks English; if Dr. Schleicher did not, then he (Griffin) would not have believed the contents of the letter. Inconsistency? Yes! What does Bookout's customary behavior have to do with Dr. Schleicher's ability to speak English?

Then comes the reference to the altercation Bookout had with a police officer. First, we know that assault is a misdemeanor. In this case, its prejudicial effect far outweighs its probative value. Secondly, we do not know whether the incident occurred in December or January of 1975, as the question from appellees' counsel was not clear. If it was December, then it was irrelevant, since it occurred after the incident which is the subject of this suit. Thirdly, the only one who knew about it was Mr. Murray. He testified that he really did not believe it when he read it in the newspaper. Besides that, Mr. Murray played no role in determining Bookout's character before they fired him.

The majority also notes that Dr. Griffin testified that he discussed the matter with Mr. Nohynek before concluding that the allegations in the letter were true. However, Dr. Wiley, who precipitated the firing, did not discuss it with Mr. Nohynek, nor did he know that Dr. Griffin had discussed it with him. Also, during deposition testimony in February 1978, Dr. Griffin testified that he did not recall where he discussed the matter with Mr. Nohynek. Yet, two years later, he recalled that Mr. Nohynek had gone to him to discuss the situation. We all know this goes toward credibility, and, as such, is for the jury.

There were sufficient facts and inferences therefrom for the jury to have concluded that the College and Dr. Griffin abused their qualified privilege.

The appeal on abuse of privilege should be denied for another reason. An analysis of N.M.R.Civ.P. 50(b), N.M.S.A.1978 (Repl. Pamp.1980), discloses that appellees' failure to raise the issue of abuse of privilege in their directed verdict motion constitutes a waiver of that ground for purposes of their judgment N.O.V. motion. Rule 50(b) states in pertinent part:

Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury *subject to a later determination of the legal questions raised by the motion* * * *. [A] party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered *in accordance with his motion for a directed verdict*; or if a verdict

was not returned * * * may move for *judgment in accordance with his motion for a directed verdict.* [Emphasis added.]

At the close of all the evidence, appellees moved for a directed verdict on the grounds that "there has been no evidence in this case establishing legal cuase [sic] of damages to the plaintiff as a result of any publication on behalf of Albany Medical College or Dr. Griffin."

Since the issue of sufficiency of the evidence to establish abuse of privilege was first presented during appellees' motion for judgment N.O.V. and was not raised in the original motion for a directed verdict, the issue was raised too late to be the subject of review. *See Williams v. Town of Silver City*, 84 N.M. 279, 502 P.2d 304 (Ct.App.), *cert. denied*, 84 N.M. 271, 502 P.2d 296 (1972); *Williams v. Stockman's Life Insurance Company*, 250 Or. 160, 441 P.2d 608 (1968).

I, next, turn to an analysis of whether Bookout was entitled to any damages.

In an action for defamation, a plaintiff is entitled to recover an amount which will fairly compensate him for the injury suffered. *Faulk v. Aware, Inc.*, 19 A.D.2d 464, 244 N.Y.S.2d 259, (1963), *aff'd*, 14 N.Y.2d 899, 252 N.Y.S.2d 95, 200 N.E.2d 778 (1964). The court in *Faulk* stated that:

The plaintiff's prior earnings are an important factor in assessing the damage suffered when his earnings are cut off. His damage need not be limited to the level of his actual earnings at the time of the libel. His potential earnings may be taken into consideration when there is evidence to enable a jury to assess those potentialities. [Citation omitted.]

*Id.* 244 N.Y.S.2d at 265.

In the case at bar, four elements of damage were submitted to the jury: (1) lost earnings; (2) lost future earnings; (3) emotional distress; and (4) punitive damages. The jury was instructed on proximate cause and instructed that Bookout had the burden of proving that the publication of the libelous letter proximately caused the damages complained of. The jury was also instructed that the College claimed the affirmative defense of truth and that the court had

found a qualified privilege in their favor. It was the jury's duty to determine whether the qualified privilege was abused, and, if they so found, Bookout would be entitled to a verdict in his favor if the jury also found that appellees failed to prove their affirmative defense of truth. The jury found an abuse of the qualified privilege and awarded Bookout $50,000.00 in damages. The fact finders' verdict should not be so subtly set aside.

The College argues that damages for loss of employment flowing from a libelous statement are not recoverable as a matter of law. Citing *Garza v. United Child Care, Inc.*, 88 N.M. 30, 536 P.2d 1086 (Ct.App. 1975), appellees reason that, since an employment relationship is terminable at will, a discharge without cause does not give rise to a breach of contract justifying recovery of damages. *Garza* is distinguishable in that it was an action for a breach of contract, whereas this is an action for libel. Moreover, the College did not discharge Bookout without cause, but discharged him for "rudeness and insubordination to visiting scientists," which was never proven to be true.

The College further contends that this Court should follow the holdings in *Montgomery Ward & Co. v. Skinner*, 200 Miss. 44, 25 So.2d 572 (1946), and *Haddad v. Sears, Roebuck & Co.*, 526 F.2d 83 (6th Cir. 1975), which state that, in an action for libel, the jury cannot award any damages because the libeled employee is discharged. I cannot agree with appellees' argument. Neither of the two cases cited authority for their proposition, nor have the cases, themselves, been cited for that proposition. Moreover, *Skinner, supra*, was a 3–3 decision, and the statement in *Haddad, supra*, was mere dictum, since the holding of the case was based upon the issue of qualified privilege.

The better rule is in the Restatement (Second) of Torts § 622 (1977). "One who is liable for * * * a libel is also liable for any special harm legally caused by the defamatory publication." Special harm may be the loss of earnings. *Korry v. Intern.*

*Tel. & Tel. Corp.*, 444 F.Supp. 193 (S.D.N.Y. 1978). It may also be a failure to recognize a reasonable expectation of gain, such as the denial of employment, which the plaintiff would have received but for the defamatory statement. It is not necessary that the plaintiff be legally entitled to receive the benefits denied because of the defamation; it is enough that the defamation has disappointed a reasonable expectation of receiving a gratuity. *See* Restatement, *supra,* § 575, comment b. In the case at bar, there was more than an expectation of a gratuity; Bookout was employed as a veterinary technician at the chimpanzee breeding colony of the College, one of only a few facilities in the nation. He was discharged from his scarce position on the basis of allegations which have never been proven. Thus, Bookout having alleged loss of employment as a special harm, it was proper for the court to instruct the jury on lost earnings.

Appellees also argue that their publication of the libelous letter was not the proximate cause of any emotional distress of Bookout. They contend that any emotional distress was a result of the firing, not of the libelous letter. I disagree. Bookout testified that he was bothered by the incident for about two years. He stated, "to think that they fired me—and I done my best to do them a good job—and they had no more faith in me than to just fire me without even asking me about it." This testimony, together with that of his wife, supports the jury verdict that emotional distress was a proximate result of his being fired for an unwarranted reason.

The trial court erred in granting appellees' judgment N.O.V., sufficient evidence being presented to sustain the verdict. However, in its order granting judgment N.O.V., the court stated:

> IT IS FURTHER ORDERED that in the event judgment for Defendants entered herein is reversed on appeal, the alternative motion of Defendants for a new trial is granted on the following grounds:
>
> A. The verdict is excessive.
>
> B. There is no reasonable basis upon which this Court can cure any excessive verdict by a remittitur.
>
> C. The damages awarded by the jury are so grossly out of proportion to the injury received by the Plaintiff that it shocks the conscience of the Court.
>
> D. The verdict appears to have been based upon passion and prejudice and not proved by a preponderance of the evidence.
>
> E. False issues were interjected in this case concerning the firing of Plaintiff that were not related to the defamation.

The granting of a new trial rests within the sound discretion of the trial court and will be reviewed only for a clear abuse of that discretion. *Scott v. Brown*, 76 N.M. 501, 416 P.2d 516 (1966). In the case at bar, the trial court did abuse its discretion in granting a new trial.

My discussion, *supra*, is dispositive of ground "E" of the trial court's order. The firing of Bookout was directly related to the defamation.

The remaining grounds each go to a determination of whether the damages awarded were so excessive as to be a result of passion and prejudice. *See Lujan v. Reed*, 78 N.M. 556, 434 P.2d 378 (1967). "Damages awarded by a jury should not be ruled as excessive except in extreme cases." *Chavez v. Atchison, Topeka and Santa Fe Railway Co.*, 77 N.M. 346, 351, 423 P.2d 34, 38 (1967) (citation omitted). In the case at bar, nothing in the record indicates that it is an extreme case or that the verdict was a result of passion and prejudice. It is difficult to envision how a jury can be prejudiced in favor of a plaintiff who has been made out to be an obstinate, immoral and incorrigible individual.

Furthermore, Bookout testified that, from the time of his dismissal in 1975 until the trial, he had earned $22,000.00, and that he would have earned approximately $50,-000.00 had he been employed at the College. Dr. Griffin also testified that the College gives an annual salary increase of at least 7 to 7½ percent. Thus, a minimum of $28,-000.00 represents Bookout's lost earnings up until the trial. Although Bookout's contract was terminable at will, his dismissal,

based upon a libelous statement without an investigation, was special harm and is, therefore, compensable.

As to the remaining $22,000.00, the jury was instructed on future earnings, emotional distress and punitive damages. The verdict being general, it is difficult to determine exactly what the jurors considered in awarding the damages. None of these instructions were objected to by appellees and, as such, are not reviewable. *Zamora v. Smalley*, 68 N.M. 45, 358 P.2d 362 (1961). There exists in the record evidence of Bookout's emotional distress. Whether the jury made an award of $22,000.00 for this is uncertain; however, the verdict is supported by substantial evidence and is not so excessive that it shocks the conscience of the court.

I would reverse and remand to the district court to vacate its judgment N.O.V. and a new trial, and to enter judgment in favor of Bookout for $50,000.00, with interest and costs, including those on appeal.

For all of the foregoing reasons, I respectfully dissent.