792 P.2d 1146
**Larry Douglas HOLLARS,**
**Plaintiff–Appellant,**

v.

**SOUTHERN PACIFIC TRANSPORTA-TION COMPANY, a corporation,**
**Defendant–Appellee.**

**No. 10475.**

Court of Appeals of New Mexico.

Nov. 30, 1989.

Certiorari Quashed May 2, 1990.

Jerald A. Valentine, G. Brent Poirier, Las Cruces, for plaintiff-appellant.

W. Booker Kelly, White, Koch, Kelly & McCarthy, P.A., Santa Fe, for defendant-appellee.

## OPINION ·

APODACA, Judge.

Larry Douglas Hollars (plaintiff) appeals an order dismissing his claims with prejudice. Although defendant Southern Pacific Transportation Company (the Company) moved for dismissal of the claims pursuant to SCRA 1986, 1–012(B)(6), the trial court treated the motion as one for summary judgment. Plaintiff's complaint stated claims for: (1) benefits under the Federal Employers' Liability Act (FELA), 45 U.S.C. Section 51 et seq. (1982); (2) libel and slander; (3) negligence; (4) malicious prosecution; (5) abuse of process; and (6) violation of the New Mexico Racketeering Act.

Claim (6) has been abandoned and is not relevant to this appeal.

Although the trial court did not enter any specific findings, the order of dismissal apparently was based on a conclusion that all of plaintiff's claims were preempted by the Railway Labor Act (RLA), 45 U.S.C. Sections 151 to 188 (1982).

Plaintiff raises four issues on appeal: (1) whether his state tort claims were preempted by the RLA; (2) whether the alleged defamatory statements were privileged; (3) whether abuse of process and malicious prosecution were applicable to federal administrative hearings; and (4) whether emotional injuries can be the basis for a FELA claim.

We hold that plaintiff's complaint did not state a cause of action for malicious prosecution or abuse of process and affirm the trial court's dismissal of those claims. We also hold that, in the absence of an allegation of physical injury, plaintiff did not state a cause of action under the FELA and we thus affirm the dismissal of that claim. We further hold that plaintiff's defamation claim was not preempted under the RLA, reverse the trial court on that issue and remand for further proceedings to determine whether the alleged defamatory statements were privileged. Finally, we reverse the trial court with respect to the negligence issue and remand for a determination of whether an interpretation of the collective bargaining agreement is necessary to resolve that issue.

BACKGROUND

Plaintiff was employed by the Company as a railroad engineer. On July 27, 1984, when he was going off duty, plaintiff asked the Company's clerk when it was likely he would next be "called" to duty. The clerk replied he did not expect plaintiff to be called until the following day. That evening, plaintiff went with friends to a restaurant and nightclub. At approximately 2:00 a.m. the next day, one of the Company's employees, D.L. Unck, called plaintiff and requested that he report to work. Plaintiff had recently returned home and told Unck he was not in any condition to take his turn. He asked to be "laid off and

marked to the foot of the board." This is a customary procedure permitting an engineer to decline to accept duty and to be placed at the bottom of the list of employees subject to call.

Later, a Company employee stated to two managerial employees that Unck said plaintiff had told him he had been drinking and was unable to report to duty. According to plaintiff, he did not tell Unck that he had been drinking and Unck did not relate this to the other employee.

The Company instituted a formal investigation, claiming plaintiff had been intoxicated while subject to duty in violation of company rules and regulations. At an investigatory hearing, Unck testified he did not tell anyone plaintiff had been drinking. The Company's employee conducting the hearing found plaintiff had been intoxicated while subject to duty and he was dismissed from employment.

Plaintiff is a member of the Brotherhood of Locomotive Engineers Union, which has a collective bargaining agreement with the Company. Under this agreement, plaintiff appealed his dismissal to the Special Adjustment Board pursuant to procedures under the RLA. As a result of this appeal, he was reinstated and paid a portion of his backpay. In July 1987, plaintiff filed the complaint that is the basis of this appeal.

DISCUSSION

In deciding whether to grant a summary judgment motion, a trial court must view all supporting and opposing material presented and considered by it in a light most favorable to the party opposing summary judgment so that the right to a trial on the issues is preserved. *See Gonzalez v. Gonzalez,* 103 N.M. 157, 703 P.2d 934 (Ct.App.1985).

1. *Whether Plaintiff's State Tort Claims are Preempted by the RLA*

The RLA was enacted as a system for settling labor disputes involving railroad employees without interrupting interstate commerce. *See* 45 U.S.C. § 151a. The parties agree that plaintiff correctly pursued his wrongful discharge claim un-

der the pertinent RLA provisions. The essential question in this appeal, however, is whether he also had additional causes of action against his employer under state tort law.

The Company argues that plaintiff's claims arose out of the wrongful discharge and were thus preempted by the RLA. It cites *Andrews v. Louisville & Nashville Railroad,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972), which held that parties are compelled, under the RLA, to arbitrate discharge grievances before the National Railroad Adjustment Board, and a party who has litigated an issue before the Adjustment Board on the merits may not relitigate that issue in an independent judicial proceeding. Plaintiff cites the recent United States Supreme Court decision in *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) to support his argument that his state court claims were not preempted because they do not require an interpretation of the collective bargaining agreement between the union and the Company.

In *Lingle,* an employee represented by a union under a collective bargaining agreement was discharged by her employer on grounds that she had filed a false workers' compensation claim. She filed a grievance pursuant to an arbitration procedure mandated under the collective bargaining agreement and subsequently filed a state court action under the Illinois workers' compensation statute for retaliatory discharge. The case was removed to federal court on diversity grounds, where the employer argued that the claim was preempted by Section 301(a) of the Labor Management Relations Act (LMRA). *See* 29 U.S.C. § 185(a) (1982). The district court dismissed the complaint on the grounds that it was "inextricably intertwined" with a provision in the collective bargaining agreement prohibiting wrongful discharge. The Seventh Circuit affirmed, agreeing that the state claim was preempted. The Supreme Court reversed, however, holding that Section 301(a) preempted the application of state law only if such application required interpretation of a collective bargaining agreement.

In a unanimous opinion, the Court stated that

if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is preempted and federal labor-law principles—necessarily uniform throughout the nation—must be employed to resolve the dispute.

*Lingle v. Norge Div. of Magic Chef, Inc.,* at 405–06, 108 S.Ct. at 1881, 100 L.Ed.2d at 418–19 (footnote omitted). The Court also stated that

even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.

*Id.* at 408–09, 108 S.Ct. at 1883, 100 L.Ed.2d at 421 (footnote omitted).

The Company argues *Lingle* can be distinguished because it is a "301" case under the LMRA and not an RLA case. On the other hand, plaintiff asserts the preemption analysis is the same under either statute. We agree with plaintiff.

The *Lingle* court stated that "there is nothing novel about recognizing that substantive rights in the labor relations context can exist without interpreting collective-bargaining agreements." *Id.* at 411, 108 S.Ct. at 1884, 100 L.Ed.2d at 422. It then quoted from *Atchison, Topeka & Santa Fe Railway v. Buell,* 480 U.S. 557, 564–65, 107 S.Ct. 1410, 1415, 94 L.Ed.2d 563 (1987):

"This Court has, on numerous occasions, declined to hold that individual employees are, because of the availability of arbitration, barred from bringing claims under federal statutes. Although the analysis of the question under each statute is quite distinct, the theory running through these cases is that notwithstand-

ing the strong policies encouraging arbitration, 'different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers.' *Barrentine [v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 737, 101 S.Ct. 1437, 1443, 67 L.Ed.2d 641 (1981) ]."

*Id.* at 411–12, 108 S.Ct. at 1884, 100 L.Ed.2d at 422 (citations omitted) (emphasis omitted).

Finally, *Lingle* stated:

Although our comments in Buell, construing the scope of Railway Labor Act pre-emption, referred to independent *federal* statutory rights, we subsequently rejected a claim that federal labor law pre-empted a *state* statute providing a one-time severance benefit to employees in the event of a plant closing. In *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 21, 96 L.Ed.2d 1, 107 S.Ct. 2211, [2222] (1987), we emphasized that "pre-emption should not be lightly inferred in this area, since the establishment of labor standards falls within the traditional police power of the State." We specifically held that the Maine law in question was not pre-empted by the NLRA, "since its establishment of a minimum labor standard does not impermissibly intrude upon the collective-bargaining process." *Id.*, at 22, 96 L.Ed.2d 1, 107 S.Ct. 2211 [2223].

*Id.* at 412, 108 S.Ct. at 1885, 100 L.Ed.2d at 422–23.

In light of the above language, we believe it is permissible to apply the same kind of analysis applied under the LMRA to cases involving the RLA. We thus hold that *Lingle* is applicable to this appeal; plaintiff's claims were preempted by the RLA only if they require interpretation of the collective bargaining agreement.

■ Applying this test to plaintiff's causes of action, we arrive at the following conclusions. Because the defamation claims did not involve such interpretation, we hold they were not preempted. *See Tellez v. Pacific Gas & Elec. Co.*, 817 F.2d 536 (9th Cir.1987) (employee's claims for defamation, intentional infliction of emo-

tional distress and negligent infliction of emotional distress not preempted where claims did not assert rights deriving from collective bargaining agreement, did not require interpretation of agreement's terms, and state court action could not supplant arbitration process). *Cf. Scott v. Machinists Automotive Trades Dist. Lodge No. 190*, 827 F.2d 589 (9th Cir.1987) (employee's state tort claim for defamation preempted where alleged defamatory remarks made within context of formal grievance procedure provided by collective bargaining agreement). Although we conclude that the claims for abuse of process and malicious prosecution were not preempted, nonetheless, for other reasons discussed later in this opinion, we hold that the trial court did not err in dismissing those claims.

■ Plaintiff's negligence claim, however, was based on the manner in which the Company handled the investigation. Plaintiff alleged his employer had a duty to investigate fully before "bringing a formal investigation" and to dismiss charges when there was no credible evidence to support them. The nature of these allegations may require an interpretation of the collective bargaining agreement.

If, for example, the agreement outlines steps to be taken, or imposes a standard of care for investigations and grievance procedures, it may be necessary to interpret the agreement in order to determine whether the Company was negligent. On the other hand, if the agreement is mute on such standards or provisions, it is possible to determine negligence on a general standard that would not require such interpretation. Whether or not this interpretation is necessary would determine whether the claim was preempted under *Lingle*. The record on appeal does not contain a copy of the collective bargaining agreement. Nor does the record indicate that the trial court, in determining that plaintiff's claims were preempted, applied the preemption analysis enunciated in *Lingle*. We therefore conclude that remand is required for a determination by the trial court whether such interpretation is necessary.

2. *Whether the Alleged Defamatory Statements were Privileged*

■ The Company argues that even if plaintiff's defamation claims were not preempted, any statements made by its employees were nevertheless privileged. The trial court did not reach this issue because of its holding that all the claims were preempted.

The parties agree that any statements made during the formal hearings conducted by the Company and the Special Adjustment Board were absolutely privileged. *See Neece v. Kantu,* 84 N.M. 700, 507 P.2d 447 (Ct.App.1973) (there is absolute immunity from liability for defamation taking place during course of labor grievance arbitration proceedings, and the same rules of unqualified privilege apply to hearings before the National Railroad Adjustment Board and to prior hearings before a company hearing officer). *Neece* also held that investigations by an employer conducted prior to a grievance are not an indispensable part of the grievance procedure and statements made during such investigations are thus not "absolutely privileged." Both parties interpret *Neece* as holding that statements made during an investigation have a "qualified privilege." For this reason, plaintiff would be required to show that the Company knew the statements at issue were false and acted with malice. *See Bookout v. Griffin,* 97 N.M. 336, 639 P.2d 1190 (1982). Since the trial court did not make any findings on privilege, we remand for an evidentiary hearing, findings and conclusions on this question.

3. *Malicious Prosecution/Abuse of Process Claims*

(a) Malicious Prosecution:

■ Because we conclude that plaintiff's complaint did not state a claim for malicious prosecution under New Mexico law, we need not determine whether a grievance procedure under the RLA qualifies as a "civil proceeding" sufficient to base such a claim.

■ A slight majority of American courts hold that no special injury or grievance is required to establish a claim for unjustified civil litigation. W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on The Law of Torts* § 120 (5th ed. 1984). New Mexico, however, has adopted the English rule that requires an arrest of the person or seizure of the defendant's property before the defendant has a cause of action for malicious prosecution of a civil action. *Johnson v. Walker–Smith Co.,* 47 N.M. 310, 142 P.2d 546 (1943). Plaintiff urges this court to abandon the English rule. We are bound, however, by supreme court precedent. *Alexander v. Delgado,* 84 N.M. 717, 507 P.2d 778 (1973).

> [A]n action will not lie for the prosecution of civil action with malice and without probable cause, where there has been no arrest of the person or seizure of the property of the defendant, or where *the defendant has suffered no injuries except those which are the necessary result in all ordinary law suits.*

*Johnson v. Walker–Smith Co.,* 47 N.M. at 312, 142 P.2d at 547 (emphasis added). "If the bringing of the action operates to impose care and expense, or even to cast discredit and suspicion upon the defendant, the same results follow many actions of like character, whether meritorious or not. They are uncompensated burdens of litigation." *Id.* at 316, 142 P.2d at 550. *See Zamora v. Creamland Dairies, Inc.,* 106 N.M. 628, 747 P.2d 923 (Ct.App.1987). Plaintiff has not demonstrated he suffered injuries other than those that are the necessary result of an ordinary lawsuit. We therefore hold that the trial court did not err in dismissing the claim for malicious prosecution.

(b) Abuse of Process:

■ New Mexico case law requires three elements for an abuse of process claim: (1) existence of an ulterior motive; (2) an act in the use of process that would not be proper in the regular prosecution of the charge; and (3) plaintiff must suffer damages (i.e., there must be an unlawful interference with plaintiff's person or property). *Farmers Gin Co. v. Ward,* 73 N.M. 405, 389 P.2d 9 (1964); *Hertz Corp. v. Paloni,* 95 N.M. 212, 619 P.2d 1256 (Ct.

App.1980). There is no liability where a defendant has done nothing more than carry out the process to its authorized conclusion. *Prosser and Keeton, supra,* § 121. Even assuming that the grievance procedure under the RLA qualifies as "legal process" and that at the abuse of process claim is not preempted by the RLA, there is no indication that the Company did anything more than carry out the process to its authorized conclusion, or performed an act in the use of process that would not be proper in the regular prosecution of the charge. Our supreme court has noted that "[a]n abuse of process arises only when there has been a perversion of court processes to accomplish some end which the process was not intended by law to accomplish[.]" *Farmers Gin Co. v. Ward,* 73 N.M. at 406, 389 P.2d at 11. We conclude that plaintiff's complaint did not state a cause of action for abuse of process; the trial court's dismissal of that claim is affirmed.

### 4. *Whether Emotional Injuries Can Be the Basis for a FELA Claim*

■ Plaintiff's claims under the FELA did not allege any physical injury. The question, then, is whether the FELA provides a cause of action for emotional injuries only, or whether there must be some physical injury as well. There is a split in authority among the federal circuits on this issue.

Plaintiff relies on *Buell* to support his argument that physical injury is not necessary. In that case, the Ninth Circuit held that the FELA authorized recovery for emotional injury, even though the issue had not been raised in, nor addressed by the district court. The United States Supreme Court specifically declined to address the question of whether a purely emotional injury was compensable under the FELA and vacated that portion of the Ninth Circuit opinion, stating that "because of the posture in which this case comes before us, the record has never been developed on the exact nature of the allegedly tortious activity, or the extent of the injuries that respondent claims to have suffered." *Id.,* 480 U.S. at 567, 107 S.Ct. at 1417. In dicta,

the Court then stated that "FELA jurisprudence gleans guidance from common-law developments," and then proceeded to discuss generally the development of claims for emotional distress in state courts. *Id.* at 568, 107 S.Ct. at 1417.

■ Plaintiff argues this language indicates *Buell* intended each state court to determine the applicability of the FELA based on its own law applicable to the particular facts of each case. We disagree. The FELA was enacted because Congress was dissatisfied with the common law duty of a master to his servant, *Rogers v. Missouri Pacific Railroad,* 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957), and it cannot be extended nor abridged by common law or statutory laws of a state. *Graham v. Thompson,* 357 Mo. 1133, 212 S.W.2d 770 (En banc) *cert. denied sub nom., Kansas City Terminal Ry. v. Thompson,* 335 U.S. 870–71, 69 S.Ct. 166, 93 L.Ed. 414 (1948). We therefore do not believe it is reasonable to interpret *Buell* as permitting such a variation of interpretation of the FELA at the discretion of the states.

Plaintiff cites one federal district court case decided after *Buell,* in which the court held that wholly emotional/mental injury claims were cognizable under the FELA. *See Toscano v. Burlington N.R.R.,* 678 F.Supp. 1477 (D.Mont.1987). We decline to follow *Toscano,* however, since it was based on precedent within the Ninth Circuit; the court held that the statement to that effect in *Buell* was still controlling because the Supreme Court had declined to address the issue.

Since *Buell,* at least two circuits have declined to address the issue of whether a purely emotional injury is sufficient to support a FELA claim. *See Robert v. Consolidated Rail Corp.,* 832 F.2d 3 (1st Cir. 1987); *Netto v. Amtrak,* 863 F.2d 1210 (5th Cir.1989). Two others have indicated that a physical injury of some kind is required. *See Adkins v. Seaboard Sys. R.R.,* 821 F.2d 340 (6th Cir.1987) (holding that a claim of an intentional tort resulting in a purely emotional injury is not cognizable under FELA): *Hammond v. Terminal R.R.*

*Ass'n of St. Louis,* 848 F.2d 95 (7th Cir. 1988), *cert. denied,* 489 U.S. 1032, 109 S.Ct. 1170, 103 L.Ed.2d 229 (1989) (FELA did not create a cause of action for tortious harms brought about by acts lacking physical contact or threat of physical contact).

We hold that, in the absence of a physical injury, plaintiff has not stated a cause of action under the FELA; thus, the trial court did not err in dismissing this claim.

CONCLUSION

In summary, we hold that plaintiff's claim for defamation was not preempted under the RLA. Whether or not his claim for negligence was preempted, however, depends on whether an interpretation of the collective bargaining agreement is necessary to determine the adequacy of procedural standards. The case is remanded to the trial court for findings on whether interpretation of the collective bargaining agreement is necessary and whether the alleged defamatory statements were privileged and, depending on the trial court's disposition in this regard, for further proceedings on the merits.

Dismissal of plaintiff's claims for malicious prosecution, abuse of process and FELA benefits is affirmed. Plaintiff is awarded his costs on appeal.

IT IS SO ORDERED.

CHAVEZ, J., concurs.

HARTZ, J. concurs in part & dissents in part.

HARTZ, Judge (Specially Concurring in Part and Dissenting in Part).

I concur in the majority's opinion with respect to malicious prosecution, abuse of process, and the FELA. I concur in the result with respect to the defamation claim. I dissent, however, from the majority's reversal of the district court on the negligence claim. The majority fails (1) to recognize an additional source of pre-emption under the RLA and (2) to consider the lack of any non-contractual basis for the alleged duty to investigate upon which the negligence claim is predicated. Analyzing plaintiff's defamation claim in light of the additional source of pre-emption leads to the same result as the majority reaches under New Mexico law. On the other hand, because of the absence of a non-contractual duty to investigate and the interference with the policies of the RLA that could flow from recognizing plaintiff's negligence cause of action, both sources of pre-emption—the one recognized by the majority and the one it does not recognize—require dismissal of the negligence claim.

1. PRE–EMPTION

The majority applies the approach of *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) to determine whether plaintiff's state tort claims are pre-empted by the RLA. Following *Lingle,* which arose under the Labor Management Relations Act of 1947 (LMRA), not the RLA, the majority holds that a claim is pre-empted only if interpretation of the collective-bargaining agreement is necessary to decide the merits of the claim. Although I agree that the need for uniformity in interpreting collective-bargaining agreements between railroads and their employees requires that a state-law claim be pre-empted by the RLA if the claim would be pre-empted under the *Lingle* test, I do not agree that there can be no other basis for pre-emption under the RLA. The RLA is not identical to the LMRA. Its policies and procedures provide a source of pre-emption not found in the LMRA.

*Lingle* addressed pre-emption only under Section 301(a) of the LMRA, 29 U.S.C. Section 185(a) (1982). As the Court wrote: "Although § 301 pre-empts state law only insofar as resolution of the state-law claim requires the interpretation of a collective-bargaining agreement, and although Section 301 pre-emption is all that is at issue in this case, it is important to remember that other federal labor law principles may pre-empt state law." *Id.* at 409 n. 8, 108 S.Ct. at 1883 n. 8, 100 L.Ed.2d at 420 n. 8. Thus, *Lingle* itself counsels against assuming that pre-emption under Section 301 is identical to pre-emption under the RLA. Only a comparison of Section 301 with the pertinent section of the RLA, as they have been

interpreted by the United States Supreme Court, can determine whether they pre-empt state law in identical circumstances.

Section 301(a) states:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

The Supreme Court has found in that section a federal policy in favor of uniform federal interpretation of collective-bargaining agreements. As a result, whenever a state-law claim requires the interpretation of a collective-bargaining agreement, the claim is pre-empted. That is the teaching of *Lingle.*

Rather different language appears in the provision of the RLA governing resolution of employer-employee disputes. 45 U.S.C. Section 153 First (i) (1982) states:

The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions * * * shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes.

Despite the permissive wording of the statute with respect to referring disputes to the Adjustment Board, the United States Supreme Court in *Andrews v. Louisville & Nashville Railroad,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972) held that the Adjustment Board is the exclusive forum for pursuing such disputes. In other words, under the RLA the parties to a collective-bargaining agreement do not have a choice as to whether to permit resolution of their disputes by court action. The RLA, unlike Section 301, *compels* the parties to proceed only by that Act's administrative procedures for disputes covered by the Act. This difference has consequences for pre-emption analysis. As the Court stated in *Andrews:*

[S]ince the compulsory character of the administrative remedy provided by the Railway Labor Act for disputes such as that between petitioner and respondent [regarding an alleged wrongful discharge] stems not from any contractual undertaking between the parties but from the Act itself, the case for insisting on resort to those remedies is if anything stronger in cases arising under that Act than it is in cases arising under § 301 of the LMRA.

*Id.* at 323, 92 S.Ct. at 1565. *Accord Alpha Beta, Inc. v. Superior Court,* 198 Cal. App.3d 1390, 244 Cal.Rptr. 414 (1988). Indeed, *Andrews* went on to say, "A party who has litigated an issue before the Adjustment Board on the merits *may not relitigate that issue* in an independent judicial proceeding." 406 U.S. at 325, 92 S.Ct. at 1565 (emphasis added). This language suggests that the RLA pre-empts more than just court litigation of the precise cause of action arbitrated in the RLA proceeding; even a different cause of action may be pre-empted if it raises an issue already resolved through RLA proceedings. This result can be explained by the Supreme Court's statement that in return for establishment of the RLA scheme for resolving grievances, "employees were willing to give up their remedies outside of the statute." *Union Pacific Railroad v. Price,* 360 U.S. 601, 613, 79 S.Ct. 1351, 1358, 3 L.Ed.2d 1460 (1959).

In *Union Pacific Railroad v. Sheehan,* 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978), the Supreme Court expanded on this theme:

In enacting this legislation [the RLA], Congress endeavored to promote stability in labor-management relations in this important national industry by providing effective and efficient remedies for the

resolution of railroad-employee disputes arising out of the interpretation of collective-bargaining agreements. The Adjustment Board was created as a tribunal consisting of workers and management to secure the prompt, orderly and *final* settlement of grievances that arise daily between employees and carriers regarding rates of pay, rules and working conditions. Congress considered it essential to keep these so-called "minor" disputes within the Adjustment Board and out of the courts. The effectiveness of the Adjustment Board in fulfilling its task depends on the finality of its determinations. Normally finality will work to the benefit of the worker: He will receive a final administrative answer to his dispute; and if he wins, he will be spared the expense and effort of time-consuming appeals which he may be less able to bear than the railroad. Here, the principle of finality happens to cut the other way. But evenhanded application of this principle is surely what the Act requires. [Emphasis added; citations omitted.]

*Andrews, Sheehan,* and *Price* imply that the RLA establishes a national policy that in railroad-employee disputes concerning discharge, the dispute should be determined once and for all by the Adjustment Board under RLA procedures. This policy establishes a source of pre-emption in addition to the *Lingle* test.

Identifying a potentially pre-emptive federal policy under the RLA does not, however, answer the question of what particular state causes of action are pre-empted. To determine whether a state tort is pre-empted requires examining "the state interests in regulating the conduct in question and the potential for interference with the federal regulatory scheme." *Farmer v. United Bhd. of Carpenters & Joiners of Am., Local 25,* 430 U.S. 290, 297, 97 S.Ct. 1056, 1062, 51 L.Ed.2d 338 (1977). That examination leads to different results for plaintiff's defamation and negligence claims.

## 2. DEFAMATION

When the state interests are strong and there is little potential for interference with the federal regulatory scheme, federal law does not pre-empt the state tort, because in those circumstances the courts should " 'not infer that Congress ha[s] deprived the States of the power to act.' " *Id.* (quoting *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959) (footnote omitted)). Plaintiff's libel claim meets this test. *Linn v. United Plant Guard Workers of Am., Local 114,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966) is instructive. *Linn* considered whether an employer could maintain a civil action for libel based on defamatory statements allegedly published by a union and its officers during a union-organizing campaign. The Supreme Court noted that the NLRB has afforded wide latitude to employers and employees in debating the issues during such organization campaigns. Permitting state libel suits could obstruct federal labor policy by inhibiting free debate during such campaigns. Nevertheless, the Supreme Court ruled that there should be no pre-emption of state civil suits for a particularly obnoxious subclass of libel, malicious libel—"libel issued with knowledge of its falsity, or with reckless disregard of whether it was true or false." *Id.* at 61, 86 S.Ct. at 662. In the Court's view, "a State's concern with redressing malicious libel is ' . . . deeply rooted in local feeling and responsibility,' " *id.* at 62, 86 S.Ct. at 663, and "there was little risk that the state cause of action would interfere with the effective administration of national labor policy." *Farmer v. United Bhd. of Carpenters & Joiners of Am., Local 25,* 430 U.S. at 298, 97 S.Ct. at 1062.

Similarly, permitting claims of *malicious* libel allegedly occurring during the investigation of a matter to be decided under the RLA should not undercut the RLA; and compelling state interests favor permitting such claims. So long as plaintiff proves that false statements made during the investigation were made with knowledge of their falsity, or with reckless disregard of whether they were true or false, those claims are not pre-empted by the RLA. This being the conclusion of the majority, I

concur in the result with respect to the defamation claim.

## 3. NEGLIGENCE

The majority remands this case to the district court for review of the collective-bargaining agreement to decide whether interpretation of that agreement is necessary for determination of the merits of plaintiff's negligence claim. But remand is unnecessary. There are two possibilities on remand—either (1) the agreement deals with the employer's duty in investigating alleged misconduct or (2) the agreement does not address the subject. In either case dismissal is required. If the agreement deals with the employer's duty to investigate, then the negligence claim is pre-empted under the *Lingle* test. (The agreement may well have pertinent provisions. *See Magnuson v. Burlington N., Inc.,* 576 F.2d 1367, 1369 (9th Cir.) (referring to provision of collective-bargaining agreement prohibiting railroad from disciplining employee " 'without proper investigation.' "), *cert. denied,* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978).) On the other hand, if the agreement does not address a duty to investigate, the negligence claim must be dismissed because no non-contractual duty to investigate allegations before discharging an employee has been recognized in New Mexico. Neither plaintiff's briefs nor the majority's opinion recites authority for any such duty. On the contrary, in the absence of a claim of a retaliatory discharge (which is not alleged here) or a contractual right, an employer in New Mexico can discharge an employee "at will." *Chavez v. Manville Prods. Corp.,* 108 N.M. 643, 777 P.2d 371 (1989). *Cf. Andrews v. Louisville & Nashville R.R.,* 406 U.S. at 324, 92 S.Ct. at 1565 (only source of railroad worker's right not to be discharged is collective-bargaining agreement). *A fortiori* an employer has the legal right to dismiss an employee on the basis of charges which the employer may not have investigated adequately, unless the contract of employment provides otherwise. In short, remand for review of the collective-bargaining agreement serves no purpose, because either (1) the agreement provides for a duty to conduct a reasonable investigation, in which case the cause of action is pre-empted under the *Lingle* test, or (2) the agreement does not provide for such a duty, in which case plaintiff's claim fails because there can be no breach of a non-existent duty.

Moreover, even if this court could recognize for the first time an employer's duty to investigate allegations with due care before discharging an employee, a negligence cause of action in this case would be pre-empted by the RLA. Recognition of a cause of action for negligent investigation by the employer could significantly undermine the RLA policy that grievances regarding discharge be *finally* decided by the Adjustment Board. Almost any dispute with a factual component (as opposed to one based solely on interpretation of the contractual language) could end up in court. Indeed, an employee would have a colorable claim of negligence against an employer any time a factual dispute was ultimately decided in favor of the employee during RLA arbitration. Thus, state-law negligence claims could undermine RLA policy that disputes be decided with dispatch and finality by the Adjustment Board in order that the nation's transportation system not be disrupted by festering disputes. At the same time, there is no strong state interest in permitting the negligence claim. Given the failure of New Mexico prior to this case to recognize a cause of action for negligent investigation by an employer, such a cause of action could hardly be described as one " ' * * * deeply rooted in local feeling and responsibility.' " *Linn v. United Plant Guard Workers of Am., Local 114,* 383 U.S. at 62, 86 S.Ct. at 663. Thus, the negligence cause of action is pre-empted because it would upset RLA policy without advancing a compelling state interest.

For the above reasons I dissent from the majority's failure to affirm the district court's dismissal of the negligence claim.