442 P.2d 783

**MAHONA–JOJANTO, INC., N. S. L., a New Mexico Corporation, Plaintiff-Appellant,**

v.

**BANK OF NEW MEXICO, a New Mexico Corporation, Defendant-Appellee.**

**No. 8547.**

Supreme Court of New Mexico.

July 8, 1968.

Dolan & Clear, Menig & Sager, Albuquerque, for appellant.

Marron, Houk & McKinnon, Albuquerque, for appellee.

## OPINION

CARMODY, Justice.

This action was predicated upon the publication of an allegedly libelous letter. The trial court, based upon depositions and affidavits in the file, granted summary judgment in favor of the defendant. Plaintiff appealed, claiming there were genuine issues of material fact and that summary judgment was improper.

Prior to August 1, 1966, the plaintiff was negotiating with an agency of the federal government in an effort to obtain a contract for the manufacture of several thousand pairs of combat pants. Anticipating that additional financing would be required, plaintiff requested a meeting be held on August 1, 1966, at which representatives of the plaintiff, of the bank, and certain officials of the Small Business Administration be present. Although no formal application had been made to the Small Business Administration, the purpose of the meeting was to consider a request by the plaintiff for a revolving loan in the amount of $175,000.00 to finance the contract. At this meeting, the bank's representatives stated that they were dissatisfied with the plaintiff's performance with respect to a current debt and that the bank would not be inclined to lend more funds. Thereupon, representatives of the plaintiff offered to furnish the bank a projection of costs and other factors involved in the performance of the proposed contract, and the bank agreed that it would withhold a final decision with respect to either financing a loan or acting as a participant with the Small Business Administration.

On August 17th, plaintiff entered into the contract with the federal government to manufacture the trousers. Subsequent to this and to the meeting, plaintiff furnished the projection, and, on August 26th, the bank decided to decline the loan. Based upon this decision, the following letter was written, addressed to the president of the plaintiff, and copies were sent to plaintiff's then attorney and to "Bill Williams, Small Business Administration":

"We have reviewed in detail your application for financing the Government contract you have been awarded and wish to advise you that we are not interested in either a direct loan or on a participation with the Small Business Administration.

"The principal reasons for our decision are the past history of the company, the total risk for the processing of the contract is placed on borrowed funds, and we are not confident of the company's ability to perform on this contract which is far in excess of any volume the company has ever handled.

"We do appreciate the opportunity to review this request.

"Very truly yours,

/s/ A. J. Morris
A. J. Morris
Vice President

"ajm/ah
"cc: T. R. Montoya, Esq.
Bill Williams, Small Business
Administration."

When the copy of the letter was received by the Small Business Administration, one of its employees underlined with a red pencil all that appeared in the second paragraph commencing with the words "the total risk."

On October 4th, plaintiff submitted its formal loan application to the Small Business Administration, and the same was denied. As a result, plaintiff was forced to subcontract the government contract, with the resultant claimed loss of profits. This suit was filed on November 30th.

The bank's motion for summary judgment was based upon three distinct grounds: (1) the assertions in the letter were true; (2) that the transmittal of the copy of the letter was motivated by the bank's understanding that it was required by the Small Business Administration's regulations and was requested by the plaintiff; and (3) that the sending of the copy of the letter was not the cause of the declination of the loan, therefore did not cause the subcontracting, and that there was no competent evidence to the contrary. All of these points are reargued before us, but need not be individually determined.

There need be no citation of authority that with respect to the granting of summary judgment: all doubts as to the existence of a genuine issue of fact must be resolved against the the movant, and that affidavits and depositions on file must be appraised in the aspect most favorable to the respondent. Also, all permissible inferences favorable to the respondent from the facts established must be considered in determining whether an issue of fact requiring trial exists. With these rules in mind, we approach the problem presented. In this connection, there is no contention here with respect to whether or not the letter is or is not libelous. The issues are only those as above stated with regard to the granting of summary judgment.

The issue of qualified privilege, if present, is dispositive of the case.

The existence of a privileged occasion is a question of law, to be decided by the court. Stewart v. Ging, 64 N.M. 270, 327 P.2d 333 (1958). Although the privilege can be lost through abuse, in a case where only one conclusion can be drawn from the evidence, the question of abuse of privilege should likewise be determined as a matter of law.

We are of the opinion that the sending of the copy of the letter was qualified or conditionally privileged. An occasion giving rise to the privilege is one consisting of a good-faith publication in the

discharge of a public or private duty when the same is legally or morally motivated. See, Ward v. Ares, 29 N.M. 418, 223 P. 766 (1924); and see generally, Restatement, Torts, §§ 593–598 (1938). Here, the sending of the copy of the letter was as much a part of the meeting of August 1st as though it had occurred at such meeting. The meeting was never in reality fully completed, because of plaintiff's request that the bank's final decision be deferred until further information was furnished; so the letter was the logical consequence of that meeting and was a good-faith publication in the discharge of a public or private duty.

 There was no abuse of the privilege. Abuse arises out of the publisher's lack of belief, or reasonable grounds for belief, in the truth of the alleged defamation; by the publication of the material for an improper use; by the publication to a person not reasonably necessary for the accomplishment of the purpose; or by publication not reasonably necessary to accomplish the purpose. Ranous v. Hughes, 30 Wis.2d 452, 141 N.W.2d 251 (1966); see generally, Restatement, Torts, §§ 599–605 (1938), and Prosser, Torts, § 110 at 819–823 (3d ed. 1964). The record indicates no basis upon which reasonable men can differ on the question of abuse; none of the criteria of abuse above listed is suggested by the evidence.

Appellant relies on John v. Tribune Co., 28 Ill.App.2d 300, 171 N.E.2d 432 (1960), rev'd on other grounds 24 Ill.2d 437, 181 N.E.2d 105 (1962), cert. denied 371 U.S. 877, 83 S.Ct. 148, 9 L.Ed.2d 114, where a good-faith mistake was urged. However, the case is inapposite, as the court there denied the defense "where the publication of defamatory matter is shielded by no privilege * * *." In the case at bar, the privilege exists. Neither do we feel that Ex parte Cypress, 275 Ala. 563, 156 So.2d 916 (1963) is applicable.

The sending of the copy of the letter was conditionally privileged and there was no abuse thereof. Thus it follows the trial court was correct in granting summary judgment. This being true, it is unnecessary to consider the other arguments urged for reversal.

The judgment will be affirmed. It is so ordered.

CHAVEZ, C. J., and COMPTON, J., concur.