589 P.2d 1056

Mary E. GENGLER, Plaintiff-Appellant,

v.

McKinley PHELPS, Jr., and Albuquerque Anesthesia Services, Ltd., Defendants-Appellees.

No. 3250.

Court of Appeals of New Mexico.

Nov. 28, 1978.

Writ of Certiorari Denied Jan. 3, 1979.

Alfred M. Carvajal, Albuquerque, for plaintiff-appellant.

Thomas J. McBride, Johnson, Paulantis & Lanphere, Albuquerque, for defendants-appellees.

## OPINION

SUTIN, Judge.

This is an action for slander arising out of oral publications that defamed the plaintiff in her profession as a nurse-anesthetist. A directed verdict was granted defendants and plaintiff appeals from the judgment entered. We affirm.

### A. *Facts most favorable to plaintiff.*

Plaintiff, a certified nurse-anesthetist, was given notice by the corporate defendant on March 5, 1974, that her employment with them would terminate on June 30th. On about March 26th plaintiff applied to Veterans Hospital for employment. The written application asked: ·

10. WHEN MAY INQUIRY BE MADE OF YOUR EMPLOYER?

Anytime.

After the initial portions of this application were completed, Dr. Phelps spoke with Dr. Clark and Dr. Smith of the Veterans Administration Hospital individually and on two separate occasions. Phelps told both Clark and Smith that Gengler lacked professional competence and plaintiff's application for employment was denied because of this "less than desirable reference."

The evidence is unclear as to whether Phelps spoke with Smith or Clark prior to or after the Veterans Administration's decision not to hire Gengler had been made. We will assume that both conversations took place prior thereto. Dr. Smith made inquiry of Dr. Phelps, but Phelps volunteered his opinion of Gengler's competency to Dr. Clark.

We note in passing that in addition to Phelps' statements concerning Gengler, a letter was sent to the Veterans Administration Hospital by Dr. Ogg on the letterhead of the corporate defendant. This letter has no relevance because plaintiff's complaint alleges only slander and not libel.

The only issue on appeal is whether Phelps' statements to Smith and Clark were privileged as a matter of law.

### B. *Phelps' oral publications to Dr. Smith were absolutely privileged.*

In her application for employment with Veterans Hospital, plaintiff consented that inquiry be made of her qualifications as a nurse-anesthetist. Dr. Smith called Dr. Phelps to solicit this information. Dr. Phelps claims this disclosure is absolutely privileged. We agree. This is a matter of first impression.

■ Absolute immunity or privilege is a question of law for the court to decide. *Franklin v. Blank*, 86 N.M. 585, 525 P.2d 945 (Ct.App.1974).

In *Stewart v. Ging*, 64 N.M. 270, 273, 327 P.2d 333, 335 (1958), the court said:

. . . Absolute immunity from responsibility without regard to purpose, motive, or reasonableness of conduct is, and should be, confined to a very few rather well-recognized situations. Prosser on Torts § 94 (1941). . . .

These "well-recognized situations," which include consent of plaintiff, are set forth in *Neece v. Kantu*, 84 N.M. 700, 507 P.2d 447 (Ct.App.1973), 60 A.L.R.3d 1030 (1974). "One who has himself invited . . . the publication of defamatory words cannot be heard to complain of the resulting damages to his reputation . . . ." Prosser, Law of Torts (4th Ed. 1971), p. 784.

The rule is succinctly stated in Restatement, Torts 2d, § 583 (1977):

[T]he consent of another to the publication of defamatory matter concerning him is a complete defense to his action for defamation.

Comment f states:

The privilege conferred by the consent of the person about whom the defamatory matter is published is absolute. The

protection given by it is complete, and it is not affected by the ill will or personal hostility of the publisher or by any improper purpose for which he may make the publication, unless the consent is to its publication for a particular purpose, in which case the publication for any other purpose is not within the scope of the consent. [*Id.* at 242].

This is established law. *Peterson v. Mountain States Tel. & Tel. Company*, 349 F.2d 934, 938 (9th Cir. 1965) said:

That publications made with the consent of the person defamed are absolutely privileged appears to be well settled. . .

*See also*, 50 Am.Jur.2d *Libel and Slander* § 149 (1970); 53 C.J.S. *Libel and Slander* § 80 (1948).

Plaintiff knew, when she signed the application, that Veterans Administration personnel would ask her former employer about her work record. Gengler consented.

■ A former employer has absolute immunity from damages in a slander suit when the alleged defamation stems from an inquiry addressed to the former employer and concerns an employee's job capabilities. In the business and professional world, public policy necessitates the disclosure of an employee's prior services when inquiry is made with the consent of the employee.

Plaintiff's only response is directed to defendants' failure to raise the issue in the court below. Plaintiff is mistaken. Defendants' second defense was:

Any statements made by these defendants, even if such statements were slanderous, which is specifically denied, were privileged.

The oral publications made by Dr. Phelps to Dr. Smith are absolutely privileged.

C. *Phelps' oral publications to Dr. Clark were conditionally privileged as a matter of law.*

We accept Dr. Clark's testimony that she did not initiate the discussion with Dr. Phelps concerning Gengler's professional competency. Since there was no consent the issue is one of conditional privilege. We hold that Dr. Phelps' oral publications were conditionally privileged as a matter of law.

Restatement, Torts 2d, § 584 (1977) by an Introductory Note, explains privileges of the second class, commonly called conditional or qualified privileges:

. . . They are more properly to be classified as privileges, since they arise out of the particular occasion upon which the defamation is published. They are based upon a public policy that recognizes that it is desirable that true information be given whenever it is reasonably necessary for the protection of the actor's own interests the interest of a third person or certain interests of the public. In order that this information may be freely given it is necessary to protect from liability those who, for the purpose of furthering the interest in question, give information which, without their knowledge or reckless disregard as to its falsity, is in fact untrue. [*Id.* at 243–244.]

■ The general rule applicable to an employer-employee relationship makes it clear that a former employer is conditionally privileged for statements made about a former employee if made to one having an interest in the subject matter of the statements. Annot., *Statement with reference to discharge from private employment as actionable per se*, 66 A.L.R. 1499 (1930). The circumstances are such as to make it proper that the information be given. I Harper & James, § 5.26, p. 447 (1956). A conditional privilege is also a question of law for the court to decide. *Mahona-Jojanto, Inc., N.S.L. v. Bank of New Mexico*, 79 N.M. 293, 442 P.2d 783 (1968). And the privilege has been recognized as a matter of law. *Edwards v. James Stewart & Co.*, 82 U.S.App.D.C. 123, 160 F.2d 935 (1947).

Restatement, ibid., § 595 Comment i, *Character of servant* states the rule in this fashion:

468

Under many circumstances, a former employer of a servant is conditionally privileged to make a defamatory communication about the character or conduct of the servant to a present or prospective employer. The defamatory imputations, however, must be made for the purpose of enabling that person to protect his own interests, and they must be reasonably calculated to do so. Accordingly, only information that is likely to affect the honesty and efficiency of the servant's work comes within the privilege. . .

In New Mexico, an occasion giving rise to a conditional privilege "is one consisting of a good-faith publication in the discharge of a public or private duty when the same is legally or morally activated." *Mahona-Jojanto, Inc., supra* [79 N.M. at 295–6, 442 P.2d at 785–86]. Unquestionably, as a professional duty, Dr. Phelps was morally and actively motivated, in good faith, to disclose his knowledge of plaintiff's work as a nurse-anesthetist for the benefit and protection of Veterans Hospital. We can find no evidence of any other purpose in the record, nor any inferences from the facts that would disclose any other purpose. The contents of Dr. Clark's "interview" with Dr. Phelps were not inquired into during her examination. This was the only source that could cast any aspersions on Dr. Phelps' purposes. There is no evidence that Dr. Phelps lacked knowledge of plaintiff's work connected aptitudes as a nurse-anesthetist, nor that he was in reckless disregard of the truth or falsity of statements made. We are convinced that Dr. Phelps acted in good faith with a firm belief in the truth of his oral publications. He was simply mistaken in his belief that Dr. Clark made inquiry of him.

■ We conclude that Dr. Phelps acquired a conditional privilege. However, this privilege can be lost when the privilege is abused. *Mahona-Jojanto, Inc., supra*, sets forth the standards of an abuse of privilege. It states:

. . . Abuse arises out of the publisher's lack of belief, or reasonable grounds for belief, in the truth of the alleged defamation; by the publication of the material for an improper use; by the publication to a person not reasonably necessary for the accomplishment of the purpose; or by publication not reasonably necessary to accomplish the purpose. [79 N.M. at 296, 442 P.2d at 786.]

■ The conditional privilege has the effect of taking away from defamatory language the presumption of malice in the publication, and casts upon the plaintiff the burden of proving actual malice. If the burden is carried forward by the plaintiff, the conditional privilege becomes functus officio and affords no further protection. *Ward v. Ares*, 29 N.M. 418, 223 P. 766 (1924). In this respect plaintiff failed.

We commend, not condemn, members of the medical profession who, in good faith, seek to protect a hospital as well as patients in the hospital in need of anesthesia, even though the oral publication may be of some harm to an anesthetist. A hospital is vitally interested in the qualifications of anesthetists whose conduct may affect the life or health of its patients. From this viewpoint, it is of primary concern to this Court that a doctor who does not abuse the conditional privilege in the service of his profession to hospitals, should be protected, not that his employee should have the right to recover damages for slander.

■ We conclude that Dr. Phelps acquired a conditional privilege and did not abuse it as a matter of law.

E. *This Court cannot revise the law of defamation.*

Defendants contend that the common law of defamation should be changed in New Mexico based upon *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), decided under the freedom of the press clause of the First Amendment; that its rationale is equally applicable to the law of private defamation under the First Amendment guarantee of freedom of speech. *Millsaps v. Bankers Life Company*, 35 Ill.App.3d 735, 342 N.E.2d 329 (1976);

*Jacron Sales Co., Inc. v. Sindorf,* 276 Md. 580, 350 A.2d 688 (1976); Hill, *Defamation and Privacy Under the First Amendment,* 76 Columbia L.R. 1205 (1976) at 1223; "The Supreme Court, 1973 Term," 88 Harv.L.R. 41, 148 n. 52 (1974); Restatement, ibid., § 580B and comments.

We commend defendants' attorneys for the presentation of this progressive and interesting development in the law of defamation, but as they well know, this matter rests in the jurisdiction of the Supreme Court.

Affirmed.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concurring in result only.