871 P.2d 374

**Mark BAKER, Plaintiff–Appellant,**

v.

**Yogi BHAJAN, a/k/a Harbhajan Singh Yogiji Khalsa, a/k/a Siri Sing Sahib Harbhajan Singh Khalsa Yogiji, et al., Defendants–Appellees.**

**No. 20532.**

Supreme Court of New Mexico.

March 14, 1994.

Herbert M. Silverberg, Santa Fe, for appellant.

Browning, Peifer & Wishner, P.A., Jane B. Wishner, James O. Browning, Keleher & McLeod, Russell Moore, Thomas C. Bird, Daniel Coit Lill, P.A., David N. Greer, Albuquerque, for appellees.

Albert Roland Fugere, Deputy Chief Counsel, Santa Fe, for amicus curiae, N.M. Dept. of Public Safety.

## OPINION

FROST, Justice.

The motions for rehearing filed in this matter are denied. The opinion initially filed in this case is vacated, and this opinion is substituted therefore.

This appeal, certified to us from the Court of Appeals pursuant to NMSA 1978, Section 34–5–14(C)(2) (Repl.Pamp.1990), involves issues of absolute and qualified privilege in an action for defamation. Plaintiff–Appellant Mark Baker appeals an award of summary judgment against him and in favor of Defendants–Appellees, members of the Sikh community and operators of Akal Security, Inc. (collectively, the "Sikhs"). In this appeal we determine whether Baker contractually con-

sented to the Sikhs' alleged defamatory statements, making the statements absolutely privileged, or whether the Sikhs' alleged defamatory statements were conditionally privileged. The district court granted the Sikhs' motion for summary judgment on the grounds of absolute privilege. *See Gengler v. Phelps*, 92 N.M. 465, 589 P.2d 1056 (Ct.App. 1978), *cert. denied*, 92 N.M. 353, 588 P.2d 554 (1979). We conclude that certain alleged defamatory statements were absolutely privileged under Baker's consent to waiver of liability and that summary judgment based upon these statements was proper. We find, however, that other alleged defamatory statements were only conditionally privileged. We affirm in part and reverse in part.

### FACTS

Baker was a recruit in the New Mexico State Police Department (NMSP) when he was discharged. Before becoming a candidate for employment as a police officer with the NMSP, Baker had been a member of the Sikh community and had been employed by Akal Security, Inc., a Sikh-run business. Filing suit against the Sikhs for defamation, Baker claimed that the NMSP dismissed him because the Sikhs maliciously defamed him to NMSP officials, the New Mexico Attorney General, and the New Mexico Governor's Office.

As part of his application for employment with the NMSP, Baker signed a contract in which he agreed to allow the NMSP to investigate his background to discover his fitness for employment with the NMSP. Under the contract, Baker agreed to release from liability those who provided information to the NMSP under a guarantee of confidentiality. The agreement states in capital letters: "I am also waiving any right of action, cause of action, or other means of redress I may have against any person or entity supplying this information, which might arise from supplying information concerning my background to the New Mexico State Police under a guarantee of confidentiality."

In a document dated April 4, 1986, Gurutej Singh Khalsa, the vice president of Akal, responded to a confidential inquiry from the NMSP regarding Baker's qualifications and fitness for employment as a police officer. The responses to the questionnaire were quite negative. The Akal vice president stated that Baker "demonstrated an unusually low tolerance for stress associated with police work. He was easily intimidated by the public an [sic] had severe problems with authority. Furthermore, [he] has temper, anger, and apparent emotional instability [that] lead to numerous problems while employed by this organization."

In a letter dated May 23, 1986 and addressed "To Whom it May Concern," the vice president of Akal stated that Baker's extreme anxiety, hypersensitivity to stress, paranoia, resistance to authority and direction from superiors, refusal to act in stressful situations, drinking on the job, dishonesty, and lack of stability and mental capacity disqualified Baker from a position with the NMSP. The Akal vice president alleged serious incidents of extreme anger and hostility to clients and consistent failures to perform in his job as security officer with Akal. He also alleged that Baker quit when he was refused a raise.

In another letter dated May 23, 1986, Hari Kaur Khalsa, Director of Public Relations for the Sikh organization, wrote to Ms. Shirley Scarafiotti, Administrative Assistant to the Governor of New Mexico. The letter stated that Baker had serious alcohol and drug problems; that he had undergone psychiatric counseling for severe depression while in the United States Coast Guard and that his psychological and emotional instability was the reason for his discharge from the Coast Guard; and that it had been reported that Baker suffered from erratic mood swings, fits of extreme anger and violent and irrational behavior, followed by weeks of depression that interfered with Baker's work and family life. The letter alleged that Baker's hostility toward Yogi Bhajan, the chief religious and administrative authority for the Sikh religion in the Western hemisphere, posed a serious security threat, and it was the Sikhs' intention to inform the State of New Mexico before the State gave Baker a gun and the "sanction to use it." The letter further warned the NMSP that it was "tak-

ing on a very large liability" in hiring Baker because of his "serious security risk."

On June 5, 1986, Gurujot Singh Khalsa, National Affairs Advisor to the Sikhs, personally visited New Mexico Attorney General Paul Bardacke. Gurujot Singh Khalsa warned the Attorney General that an inadequate background check had been performed on Baker and that Baker had been discharged from the Coast Guard for alcohol and substance abuse. He expressed concern that Baker would make an attempt on the life of Yogi Bhajan and that Baker would pose a physical threat to the Sikh community if allowed to become a NMSP officer. The Attorney General passed this information on to the NMSP.

After having completed ten weeks of the twelve-week training course, Baker was dismissed from the NMSP. He claims that he was dismissed as a result of these defamatory statements.

## DISCUSSION

### I. Absolute Privilege

■ "An absolute or unqualified privilege means absolute immunity from liability for defamation." *Neece v. Kantu,* 84 N.M. 700, 705, 507 P.2d 447, 452 (Ct.App.), *cert. denied,* 84 N.M. 696, 507 P.2d 443 (1973). The application of an absolute privilege is confined to very few situations in which there is an obvious policy in favor of complete freedom of expression regardless of the defendant's motives. Situations in which an absolute privilege has been recognized are limited to statements in judicial and legislative proceedings, executive communications, communications between husband and wife, political broadcasts, and consent of the plaintiff. *Id.*

■ Consent, of course, is the situation that we are presented with here. "Consent, whether express or implied, gives rise to an

absolute privilege against an action in defamation. Consent will be implied where the circumstances show that a plaintiff gave his implied consent to publication, the statement is relevant to the purpose for which that consent was given, and publication is limited to those with a legitimate interest in its publication." *Yeitrakis v. Schering–Plough Corp.,* 804 F.Supp. 238, 250 (D.N.M.1992) (citations omitted).

In *Gengler,* the Court of Appeals held that because the plaintiff had consented to allow inquiries into her qualifications pursuant to a job application, the statements by a former employer in response to an inquiry were shrouded with absolute immunity. *Gengler,* 92 N.M. at 467, 589 P.2d at 1058. Quoting Section 583 of the Restatement (Second) of Torts (1977), the Court noted that the "consent of another to the publication of defamatory matter concerning him is a complete defense to his action for defamation." *Id.* at 466, 589 P.2d at 1057.

Under the terms of the contract between Baker and the NMSP, Baker consented to the publication of statements made about him by third parties within the scope of his consent under the contract. The scope of Baker's consent is broad and is expressed in unambiguous, all-inclusive language. Baker waived "any right of action, cause of action, or other means of redress ... against any person or entity ... which might arise from supplying information concerning [his] background to the New Mexico State Police under a guarantee of confidentiality." "Any right of action, cause of action, or other means of redress" includes Baker's lawsuit against the Sikhs for malicious defamation arising from the April 4, 1986 solicited statements to the NMSP.[1]

The May 23, 1986 letter addressed "To Whom it May Concern" is also absolutely privileged. By affidavit of the author of the letter,[2] the Sikhs established that the letter

---

1. In *Conant v. Rodriguez,* 113 N.M. 513, 516, 828 P.2d 425, 428 (Ct.App.1992), the Court of Appeals may have implied that releases which purport to grant a release of liability for willful or reckless conduct are invalid. This proposition is too broad. "It is universally held that in the right circumstances one can consent to certain actions that otherwise would be intentional torts.

This is true of defamation...." *Smith v. Holley,* 827 S.W.2d 433, 438 (Tex.Ct.App.1992), *writ denied* (Sept. 30, 1992).

2. This affidavit was unrebutted. Baker argues that "inherently suspect testimony [the affidavit] need not be believed" because juries may reject even uncontroverted evidence if it is self-serving

was written as a follow-up to the April 4, 1986 statement in response to a NMSP request for additional information from Baker. Baker's contractual consent, therefore, applied to this May 1986 letter.

There are compelling policy considerations which support our holding that the consent and waiver given by Baker to the NMSP created an absolute privilege for information provided upon request to the NMSP. A New Mexico state police officer serves in a sensitive position, and he or she must be a person of integrity and high moral character. "A state police officer occupies a special place in our society, a place of trust, honor, and dignity, and few are chosen." *State ex rel. Harkleroad v. New Mexico State Police Bd.*, 103 N.M. 270, 272, 705 P.2d 676, 678 (1985). In order to ensure that only appropriate individuals are employed, it is imperative that the NMSP be able to make fully informed decisions regarding the selection and retention of officer candidates.[3] It is therefore essential that the NMSP be able to acquire information about the background of applicants from friends, former employers, acquaintances, the military, and other persons or institutions. The waiver of liability in this matter, which grants absolute immunity to those who supply information upon request, makes possible the free flow of information vital to a law enforcement organization's ability to make responsible decisions regarding the fitness of its applicants.

■ Although the waiver of liability covers Baker's claims for defamation arising from communications by the Sikhs to the NMSP that were solicited by the NMSP under a guarantee of confidentiality, the scope of the contractual consent does not include waiver of liability for causes of action arising from communications not made to the NMSP un-

der the guarantee of confidentiality. Thus, unsolicited statements by the Sikhs to the Governor's office and the Attorney General are not absolutely privileged under Baker's contractual consent. As discussed below, these statements may be conditionally privileged.

## II. Qualified Privilege

Baker claims that even if the statements made in response to the NMSP's background investigation are absolutely privileged, he can recover on the basis of the other defamatory statements made to the Governor's office and to the Attorney General that were not made in response to the NMSP's inquiry into his background. He argues that the district court should have found that these statements were only subject to qualified privilege. We agree.

■ In an employer-employee relationship, the employer has a qualified or conditional privilege to make statements about its employee or former employee if for a proper purpose and to one having a legitimate interest in the statements. *Zuniga v. Sears, Roebuck & Co.*, 100 N.M. 414, 417, 671 P.2d 662, 665 (Ct.App.), *cert. denied*, 100 N.M. 439, 671 P.2d 1150 (1983). The former employer in *Gengler* made additional statements that were not in response to the prospective employer's background investigation. Because there was no consent to the statements not made in response to the background investigation, the *Gengler* court held that the former employer did not have absolute immunity from suit, but rather qualified immunity for those unsolicited statements. *Gengler*, 92 N.M. at 467, 589 P.2d at 1058.

■ As in *Gengler*, the statements that the Sikhs made to the Governor's office and

or otherwise so doubtful that it is inherently incredible. However, Baker, as the party resisting a motion for summary judgment, cannot meet his burden by simply arguing that at trial a jury might not believe the evidence supporting a summary judgment. *See* 6—Pt. 2 James W. Moore et al., *Moore's Federal Practice* ¶ 56.15[4], at 56–298 (2d ed. 1988) ("It is clear . . . that the opposing party is not entitled to have the motion [for summary judgment] denied on the mere hope that at trial he will be able to discredit movant's evidence. . . ."); *cf., Blauwkamp v. Uni-*

*versity of New Mexico Hospital,* 114 N.M. 228, 234–35, 836 P.2d 1249, 1255–56 (Ct.App.) ("Issues involving the weight to be accorded to the testimony of a witness are not properly resolved by summary judgment."), *cert. denied,* 114 N.M. 82, 835 P.2d 80 (1992).

3. The NMSP has legal exposure to suits for negligent hiring. *See, e.g., Ortiz v. New Mexico State Police,* 112 N.M. 249, 814 P.2d 117 (Ct.App. 1991), *cert. quashed,* 113 N.M. 352, 826 P.2d 573 (1992).

to the Attorney General were not subject to absolute privilege because Baker did not consent to their publication. The statements were subject to qualified privilege, however, because they were made by those having a legitimate interest in the statements. The two primary executive officers in the State of New Mexico, the Governor and the Attorney General, clearly have a legitimate interest in the background of candidates for employment in the NMSP. Thus, the communications by the Sikhs to the Attorney General and the Governor's office may be conditionally privileged if there is no abuse of privilege.

A conditional or qualified privilege will be lost if it is abused. *Gengler*, 92 N.M. at 468, 589 P.2d at 1059.

> "Abuse [of privilege] arises out of the publisher's lack of belief, or reasonable grounds for belief, in the truth of the alleged defamation; by the publication of the material for an improper use; by the publication to a person not reasonably necessary for the accomplishment of the purpose; or by publication not reasonably necessary to accomplish the purpose."

*Id.* (quoting *Mahona–Jojanto, Inc. v. Bank of New Mexico*, 79 N.M. 293, 296, 442 P.2d 783, 786 (1968)).

The trial court's resolution of this matter effectively prevented Baker from having the opportunity to demonstrate that a genuine issue of material fact exists concerning whether the Sikhs acted maliciously or with an improper purpose, or otherwise abused their qualified privilege. Baker submitted several affidavits stating that if he were allowed to depose the Sikhs and conduct further discovery, he could obtain information essential to defeating the motion for summary judgment. The district court apparently denied Baker's request to allow such discovery. In general, summary judgment should not be granted before a party has completed discovery. *Sun Country Sav. Bank v. McDowell*, 108 N.M. 528, 534, 775 P.2d 730, 736 (1989). Thus, summary judgment regarding the defamation actions based upon the two statements not absolutely privileged should have been denied. The district court did not allow Baker to conduct discovery necessary to prove abuse of privilege, probably because the Sikhs' motion for summary judgment did not raise the issue of qualified privilege. Baker should have the opportunity to conduct discovery on the issue of abuse of privilege before the claims based upon conditionally privileged statements may be dismissed on the Sikhs' motion for summary judgment.

## CONCLUSION

Whether a privilege exists is a question of law. *Stewart v. Ging*, 64 N.M. 270, 274, 327 P.2d 333, 336 (1958). Whether there is an abuse or breach of that privilege is a question for the jury. *Id.* at 275, 327 P.2d at 336. The allegedly defamatory statements that the Sikhs made to the NMSP in the April 4, 1986 inquiry response and the May 23, 1986 "To Whom it May Concern" letter were clothed in absolute immunity because Baker consented to these statements by the Sikhs. The district court properly awarded summary judgment on these grounds.

However, the two statements not made within the scope of Baker's consent and not absolutely privileged may be protected by qualified privilege, and claims based upon these statements should not have been rejected pursuant to the Sikhs' motion for summary judgment based upon absolute privilege. Baker did not have an adequate opportunity to make a showing that these statements constituted an abuse of privilege. Accordingly, the district court improperly awarded summary judgment regarding Baker's claims not based upon absolutely privileged statements. *See* SCRA 1986, 1–056(C) (stating that summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law).

We thus affirm in part and reverse in part.

**IT IS SO ORDERED.**

RANSOM, C.J., and BACA, J., concur.