2007-NMCA-053

160 P.3d 916

**Vincent P. DiMARCO, Plaintiff–Appellant,**

**v.**

**PRESBYTERIAN HEALTHCARE SERVICES, INC., d.b.a. Lincoln County Medical Center, Defendant–Appellee.**

**No. 26,528.**

Court of Appeals of New Mexico.

March 15, 2007.

Certiorari Denied, No. 30,326, May 2, 2007.

Law Offices of James P. Lyle, P.C., James P. Lyle, Albuquerque, for Appellant.

Rodey, Dickason, Sloan, Akin & Robb, P.A., Scott Gordon, Edward Ricco, Jocelyn Drennan, Albuquerque, for Appellee.

**OPINION**

CASTILLO, Judge.

{1} This case comes to us on an order granting summary judgment to Appellee, Presbyterian Healthcare Services, Inc., (Presbyterian), d.b.a. Lincoln County Medical Center, regarding job-related disclosures it made to Gerald Champion Regional Medical Center (GCRMC) about Presbyterian's former employee Vincent P. DiMarco (DiMar-

co), Appellant. DiMarco asserts that Presbyterian's disclosures caused him to suffer emotional distress and to lose the employment he had secured with GCRMC. Although Presbyterian argues that language in the releases signed by DiMarco before the disclosures were made act as a complete bar from liability, we need not reach this issue. For purposes of this appeal, we assume, without deciding, that the release was conditional and only waived liability regarding statements made in good faith. With this as our basis, we review the pleadings related to the summary judgment motion and conclude that DiMarco failed to rebut the prima facie case of privilege established by Presbyterian. Accordingly, we affirm.

## I. BACKGROUND

{2} DiMarco worked for Presbyterian as a physician's assistant from 1988 to 2000. He resigned his position in September 2000. About a year later, DiMarco filed a lawsuit against Presbyterian for constructive discharge, separate and apart from this case, and alleged that mismanagement in the emergency room compromised patient care and that as a result, he was forced to resign. Subsequently, DiMarco applied for a position at GCRMC. He was provisionally hired, pending GCRMC's receipt of information from DiMarco's former employers, which included Presbyterian.

{3} Plaintiff signed four releases of liability during the application process. In three releases, DiMarco discharged, without limitation, the third parties from any and all liability arising from their responses to GCRMC's requests for various types of information regarding DiMarco's work history: the Release, the Authorization and Release, and the Release and Immunity. At the same time, DiMarco also signed the Authorization of Release of Information (good faith release).

{4} GCRMC's medical staff coordinator, Diane Melendrez, faxed to Presbyterian the good faith release with a Hospital Affiliation Evaluation, seeking information about DiMarco's previous employment. Presbyterian failed to respond in full to this initial request. Presbyterian's medical staff coordinator, Debbie Perkins, confirmed DiMarco's time of employment but declined to answer specific questions about his job performance for Presbyterian. After DiMarco, his wife, and GCRMC asked Presbyterian to provide more information, Presbyterian's regional medical director, Dr. Bill Daugherty, completed the evaluation form by answering the specific questions. Some of the responses reflected negatively on DiMarco's work history; therefore, GCRMC did not hire DiMarco. As a result, DiMarco voluntarily dismissed the first lawsuit and filed a new complaint, alleging intentional interference with contractual relations, prima facie tort, and intentional infliction of emotional distress.

{5} After DiMarco filed an amended complaint, Presbyterian responded by filing a motion requesting the trial court to dismiss the complaint or, in the alternative, to grant summary judgment in Presbyterian's favor. Relying on two releases, the good faith release and the Release, Presbyterian argued inter alia that DiMarco explicitly agreed to immunize Presbyterian from liability. In opposing this motion, DiMarco argued that the good faith release limited Presbyterian's release of liability for information provided in good faith and that the Release was specific to DiMarco's insurance carrier and information concerning DiMarco's coverage. The trial court denied Presbyterian's motion. During the subsequent two-year period of discovery, more releases were produced. Presbyterian filed a second motion for summary judgment, arguing inter alia that Presbyterian had absolute immunity because DiMarco had consented to the release of his employment information and had expressly agreed not to sue Presbyterian for providing that information to GCRMC. Relying on the language of the Release and Immunity, the trial court granted summary judgment to Presbyterian. DiMarco filed a timely notice of appeal.

## II. STANDARD OF REVIEW

{6} We review de novo the trial court's grant of summary judgment. *Fikes v. Furst*, 2003–NMSC–033, ¶ 11, 134 N.M. 602, 81 P.3d 545. "Summary judgment is a drastic remedy to be used with great caution" and is appropriate only when there is

no genuine issue of material fact and when the moving party is entitled to judgment as a matter of law. *Garcia–Montoya v. State Treasurer's Office*, 2001–NMSC–003, ¶ 7, 130 N.M. 25, 16 P.3d 1084 (internal quotation marks and citation omitted); *see also Fikes*, 2003–NMSC–033, ¶ 11, 134 N.M. 602, 81 P.3d 545. In determining whether the nonmoving party has raised a genuine issue of material fact, we view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Garcia–Montoya*, 2001–NMSC–003, ¶ 23, 130 N.M. 25, 16 P.3d 1084; *Nashan v. Nashan*, 119 N.M. 625, 627, 894 P.2d 402, 404 (Ct.App.1995).

### III. DISCUSSION

{7} At trial and now on appeal, DiMarco argues the following: that any release of liability for the benefit of Presbyterian was limited to disclosures made in good faith, as intended by the parties; that NMSA 1978, § 50–12–1 (1995), and public policy limit Presbyterian's liability to information provided in good faith; that Presbyterian's disclosures violated the implied covenant of good faith and fair dealing; that any privilege held by Presbyterian was conditional and thereafter was forfeited through abuse; and that Presbyterian's disclosures constitute a prima facie tort because they were committed for the sole purpose of harming DiMarco. In turn, Presbyterian argues that the language of the Release and Immunity unambiguously released Presbyterian from liability and that neither public policy nor the implied covenant of good faith and fair dealing limited the release. Presbyterian also argues that DiMarco's consent to the disclosure conferred an absolute privilege and that Presbyterian provided only truthful information and thus cannot be held liable, regardless of whether providing this information caused actual damage to DiMarco. Presbyterian observes that it is required to respond truthfully to the inquiry from GCRMC because Presbyterian could have been subject to liability to any third person for any injury caused by DiMarco at GCRMC. *See Davis v. Bd. of County Comm'rs*, 1999–NMCA–110, ¶¶ 21–22, 127 N.M. 785, 987 P.2d 1172 (concluding that in cases of foreseeable physical harm, the defendants owed "a duty of care, once

they elected to make employment recommendations . . ., in regard to what they said and what they omitted from their references").

{8} Our decision today rests on resolution of DiMarco's third argument—abuse of conditional privilege. We interpret Presbyterian's argument regarding truthfulness as an assertion that it acted in good faith because it had a duty to provide accurate, or truthful, information and because its disclosures were, accordingly, truthful. *See id.* ¶¶ 15, 18–20 (accepting the principles of negligent misrepresentation set forth in the Restatement (Second) of Torts § 311 (1965), in cases of employer references for positions posing risk of physical harm to third parties). After review of the pleadings and record, we conclude that DiMarco failed to rebut Presbyterian's prima facie case of conditional privilege because he failed to carry his burden to prove that Presbyterian did not act in good faith. *See Gengler v. Phelps*, 92 N.M. 465, 468, 589 P.2d 1056, 1059 (Ct.App.1978) (stating that the plaintiff has the burden to prove actual malice in a defamation cause of action and thereby show that the defendant abused its conditional privilege); *see also* Restatement (Second) of Torts § 890 & cmts., at 355–59 (1979) (discussing privilege as it applies generally in tort actions).

{9} "[A]n appellate court will affirm the district court if it is right for any reason and if affirmance is not unfair to the appellant." *Maralex Res., Inc. v. Gilbreath*, 2003–NMSC–023, ¶ 13, 134 N.M. 308, 76 P.3d 626 (internal quotation marks and citation omitted); *see also State v. Muñiz*, 2003–NMSC–021, ¶ 5, 134 N.M. 152, 74 P.3d 86 ("[W]e must affirm the district court if its decision was correct."). DiMarco had a substantial period of discovery to obtain evidence supporting his theory of the case. Moreover, he presented evidence to the trial court in support of his arguments regarding abuse of privilege, which were made both below and in his appellate briefs. Thus, we conclude that DiMarco is not prejudiced by our resolution of the issue on grounds different from those of the trial court. Our determination that DiMarco failed to rebut Presbyterian's prima facie case of privilege makes

it unnecessary to address DiMarco's remaining arguments.

{10} We begin by assuming, but not deciding, that Presbyterian's disclosures are protected only if made in good faith and that, accordingly, Presbyterian's privilege is conditional, subject to forfeiture if the privilege is abused. *Baker v. Bhajan,* 117 N.M. 278, 283, 871 P.2d 374, 379 (1994) ("A conditional or qualified privilege will be lost if it is abused."); *Bookout v. Griffin,* 97 N.M. 336, 339, 639 P.2d 1190, 1193 (1982) ("[Q]ualified privilege exists where there is a good faith publication in the discharge of a public or private duty."); *see, e.g., Williams v. Bd. of County Comm'rs,* 1998–NMCA–090, ¶ 22, 125 N.M. 445, 963 P.2d 522 (assuming without deciding for purposes of the discussion). At common law, a former employer is conditionally privileged when it provides information about a former employee to another person who has an interest in the subject matter of the information. *Gengler,* 92 N.M. at 467, 589 P.2d at 1058. In our case, Presbyterian clearly has a conditional privilege—at common law, under the terms of the good faith release, and pursuant to Section 50–12–1. *Id.* ("When requested to provide a reference on a former or current employee, an employer acting in good faith is immune from liability for comments about the former employee's job performance.").

{11} DiMarco contends that Presbyterian abused its privilege because Presbyterian lied and distorted the facts regarding DiMarco's work history in order to punish him for speaking out about alleged problems in the management of Presbyterian's emergency room and for filing the first lawsuit. A plaintiff has the burden of proving that a defendant has abused its conditional privilege. *See Gengler,* 92 N.M. at 468, 589 P.2d at 1059. An employer abuses its privilege if it lacks belief or reasonable grounds for belief in the truth of the information disclosed; if it provides information for an improper use; if it provides information to a person unnecessary for the accomplishment of the purpose; or if it provides information beyond the scope reasonably necessary to accomplish the purpose. *See id.* In our case, DiMarco makes three arguments to support his contention that Presbyterian did not act in good faith: (1) Presbyterian made statements that were not true and that it did not have reasonable grounds to believe; (2) Presbyterian's process of responding to the inquiry, as well as the production of facts ordinarily not produced in Presbyterian's employer references, amounted to a distorted view of DiMarco's work history in comparison to Presbyterian's representations of his peers' work histories; and (3) DiMarco presented evidence contrary to Presbyterian's version of the facts regarding the truth and purpose of the statements and thereby created a genuine issue of material fact, and resolution of this issue is not proper for summary judgment—the questions of fact must be reserved for trial and the fact-finder. We address each argument in turn.

## A. Alleged Falsehoods

{12} DiMarco contends that Presbyterian twice conveyed information that was "simply false." First, DiMarco alleges that Presbyterian claimed DiMarco had been terminated when, in fact, he had voluntarily resigned. In the evaluation form submitted to Presbyterian in March 2003, GCRMC asked the following question: "Has this practitioner complied with your facilities['] Medical Staff Bylaws, Rules & Regulations and Policies & Procedures during the past two (2) years . . . ?" The "past two (2) years" would refer to the period from March 23, 2001, to March 23, 2003. DiMarco was not employed by Presbyterian during this time. Accordingly, Presbyterian declined to check the boxes labeled "Yes" and "No"; it simply stated, "He [t]erminated 9/30/00[.]" We read this to mean DiMarco terminated or ended his employment in September 2000. To read it otherwise requires us to insert "was" to make the verb passive, such that another party was the actor. We decline to do so and conclude that as a matter of law, DiMarco failed to carry his burden to show that Presbyterian did not act in good faith when it responded to this question.

{13} Second, DiMarco alleges that Presbyterian claimed DiMarco no longer had privileges at Presbyterian when, in fact, his privileges were revocable only by Presbyterian's

board of trustees, which action had not occurred. We cannot find this alleged falsehood anywhere on the evaluation form. The following question on the evaluation form is most relevant to this assertion: "Does/did the applicant have similar clinical privileges in the specialty listed above at your facility?" Presbyterian responded by checking the "Yes" box. Moreover, Presbyterian responded "Yes" when asked, "To the best of your knowledge, is the practitioner competent to perform the privileges?" With this evidence, we must conclude that DiMarco failed to carry his burden to show that Presbyterian falsely and deliberately stated that DiMarco no longer had privileges at Presbyterian.

## B. DiMarco's Evaluation Form Compared to Other Employees' Evaluation Forms

■ {14} DiMarco argues that Presbyterian's representations of his work history cast him in an unfair and false light in order to sabotage his career because Presbyterian handled GCRMC's requests for information about other employees differently. Specifically, DiMarco alleges that Presbyterian delayed in completing his evaluation form; that someone other than the medical staff coordinator, who ordinarily responds to routine requests for employment information, completed the evaluation form; that the medical staff coordinator promptly completed and returned the evaluation forms for other employees; that the level 3 peer reviews and counseling in regard to patient relations, which formed the basis for some of Presbyterian's negative responses on DiMarco's evaluation form, are routine among the emergency room physicians' assistants at Presbyterian but were not reported on other employees' forms; and that information regarding judgments or settlements in which DiMarco had been named as a defendant is simply "not reportable," pursuant to Presbyterian practice.

■ {15} In making this argument, DiMarco does not contest the truth of Presbyterian's responses. Rather, he asserts that the type and quality of information conveyed to GCRMC on his evaluation form "was unprecedented in light of the type of information usually provided to prospective employ-

ers in similar situations." Thus, DiMarco appears to argue that including this information on his evaluation form reflected unfairly and adversely on his work history because this information was not included on the evaluation forms of the other two employees who were hired by GCRMC. We are not persuaded that a comparison with other employees' evaluation forms can provide the basis for alleging that an employer did not act in good faith when the information provided on the plaintiff's form was truthful. "[P]ublic policy supports full and accurate disclosure of non-confidential information by employers, and we seek to encourage employers in that direction." *Davis*, 1999–NMCA–110, ¶ 28, 127 N.M. 785, 987 P.2d 1172; *see also* Robert S. Adler & Ellen R. Peirce, *Encouraging Employers to Abandon Their "No Comment" Policies Regarding Job References: A Reform Proposal*, 53 Wash. & Lee L.Rev. 1381, 1427 (1996) (stating that the "widespread withholding of critical reference information" affects economic efficiency and presents difficulties in addressing the safety of employers, employees, and the public); Markita D. Cooper, *Beyond Name, Rank and Serial Number: "No Comment" Job Reference Policies, Violent Employees and the Need for Disclosure–Shield Legislation*, 5 Va. J. Soc. Pol'y & L. 287, 296–97 (1998); Alex B. Long, Note, *Addressing the Cloud Over Employee References: A Survey of Recently Enacted State Legislation*, 39 Wm. & Mary L.Rev. 177, 194–95 (1997). Moreover, as discussed more fully in paragraph 16, Presbyterian has a duty of care to third parties who could be physically injured by a former employee if information provided in a reference is a negligent misrepresentation of the employee's work history. *Davis*, 1999–NMCA–110, ¶¶ 21–22, 127 N.M. 785, 987 P.2d 1172. In light of public policy supporting full and accurate disclosure and of the *Davis* duty imposed on employers, we conclude that DiMarco cannot rely on the differences between his evaluation form and the evaluation forms of other employees to prove Presbyterian did not act in good faith when the disclosures made on DiMarco's evaluation form were truthful. *Cf. id.* ¶ 31 ("[T]he policy gains of imposing a duty not to misrepresent under these limited circum-

stances outweigh the potential consequences of inhibiting employer disclosure.").

{16} In addition, we are unpersuaded by DiMarco's assertions that Daugherty's delayed action in completing the evaluation form and Perkins's acquiescence in Daugherty's responses were indicative of bad faith on the part of Presbyterian. An employer has the right to be silent when a request is made for employment information. *Id.* ¶ 21. We cannot conclude that Presbyterian, in exercising its right to be silent, is subject to liability for any harm incurred by DiMarco as a result of the delay in completing the evaluation form. Nor can we conclude that Daugherty and Perkins subsequently acted with a lack of good faith by completing the evaluation form. DiMarco demanded that Presbyterian complete the evaluation form and threatened further litigation if Presbyterian did not do so. Once Presbyterian elected to respond, it was required to refrain from misrepresentations if such misrepresentations would create a foreseeable risk of physical injury to third parties. *See id.* ¶¶ 12–13. This Court concluded in *Davis* that "employers who do not remain silent ... owe [a] duty of reasonable care in regard to what they say and how they say it" when there is "a substantial, foreseeable risk of physical harm to third parties by the employee." *Id.* ¶ 13; *see also id.* ¶¶ 18–19 (stating that the rule of negligent misrepresentation involving physical harm "extends to anyone undertaking to give information to a person who knows or should realize that the safety of the person of others may depend upon the accuracy of the information" (internal quotation marks and citation omitted)). Similarly to police officers, emergency room physicians' assistants serve in sensitive positions; they are accountable for decisions that affect the health of the public. *See Baker,* 117 N.M. at 282, 871 P.2d at 378; *see also Gengler,* 92 N.M. at 468, 589 P.2d at 1059 (discussing the importance of providing information about employees in hospitals, where "conduct may affect the life or health of ... patients"). As previously discussed, DiMarco has presented no evidence that Presbyterian's responses were not truthful, accurate disclosures of events in DiMarco's work history. These disclosures meet the duty im-

posed by *Davis.* We decline to second-guess the intentions of an employer hospital that has elected to respond to an employee inquiry with truthful information, albeit negative, when the employer has a potential duty to third parties. In summary, we conclude that DiMarco failed to show that Presbyterian did not act in good faith when it responded to the questions in GRCMC's evaluation form.

## C. Genuine Issue of Material Fact

{17} Finally, DiMarco asserts that any questions of fact must be reserved for trial and the fact-finder. We agree that any genuine issues of material fact must go to the fact-finder. However, DiMarco relies on the evidence discussed in paragraphs 12–16 above as the basis for this argument. We concluded that this evidence did not support any inference that Presbyterian acted with a lack of good faith because the disclosures made in the evaluation form were true. Accordingly, we conclude as a matter of law that DiMarco failed to offer evidence establishing the existence of a genuine issue of material fact. *See Bixby v. Reynolds Mining Corp.,* 113 N.M. 372, 374, 826 P.2d 968, 970 (1992) ("[S]ummary judgment may be proper[,] even though some disputed facts remain, if the disputed facts relate to immaterial issues.").

{18} Moreover, we observe that DiMarco had a substantial period of time in which to acquire evidence that would establish the existence of a material disputed fact. Unlike the plaintiff in *Baker,* DiMarco had sufficient time to conduct and complete discovery; the complaint was filed in September 2003, and summary judgment was granted in February 2006. *Cf. Baker,* 117 N.M. at 283, 871 P.2d at 378–79 ("The trial court's resolution of this matter effectively prevented [the plaintiff] from having the opportunity to demonstrate that a genuine issue of material fact exists concerning whether the [defendants] acted maliciously or with an improper purpose, or otherwise abused their qualified privilege."). During this time, DiMarco deposed witnesses and received responses to his interrogatories and requests for production. Yet, viewing the material facts in favor of DiMarco and making all reasonable inferences in favor of a

trial on the merits, *see Upton v. Clovis Mun. School Dist.*, 2006–NMSC–040, ¶ 7, 140 N.M. 205, 141 P.3d 1259, we cannot conclude that DiMarco has come forward with sufficient evidence to rebut Presbyterian's prima facie case by proving that Presbyterian abused its privilege. *See Gengler*, 92 N.M. at 468, 589 P.2d at 1059; *see also Ciup v. Chevron U.S.A., Inc.*, 1996–NMSC–062, ¶ 7, 122 N.M. 537, 928 P.2d 263 ("Where the movant has made a prima facie showing, the opponent cannot rely on the allegations contained in its complaint or upon the argument or contention of counsel to defeat it. Rather, the opponent must come forward and establish with admissible evidence that a genuine issue of fact exists." (citation omitted)); *Bixby*, 113 N.M. at 374, 826 P.2d at 970 (stating that neither a conclusion unsupported by facts nor mere argument is sufficient to raise an issue of material fact). DiMarco failed to carry his burden to show abuse of the conditional privilege. *See Mahona–Jojanto, Inc., N.S.L. v. Bank of N.M.*, 79 N.M. 293, 296, 442 P.2d 783, 786 (1968) (affirming summary judgment for the defendant because the record provided "no basis upon which reasonable men [could] differ on the question of abuse"); *Zuniga v. Sears, Roebuck & Co.*, 100 N.M. 414, 418, 671 P.2d 662, 666 (Ct.App.1983) (concluding that summary judgment was proper because the plaintiff failed to overcome the defendants' prima facie showing); *Gengler*, 92 N.M. at 466, 468, 589 P.2d at 1057, 1059 (affirming the trial court's directed verdict and concluding, as a matter of law, that a defendant did not abuse his privilege); *cf. Fikes*, 2003–NMSC–033, ¶¶ 24–26, 134 N.M. 602, 81 P.3d 545 (concluding that the plaintiff failed to carry his burden to show improper motive and improper means and affirming the trial court's award of summary judgment to the defendant).

## IV. CONCLUSION

{19} As a matter of law, DiMarco failed to carry his burden to show that Presbyterian abused its conditional privilege when it responded to specific questions in GCRMC's request for DiMarco's employment information. Thus, under the terms of the good faith release, Presbyterian was discharged "from liability or claims of any kind or char-

acter." Accordingly, we affirm the trial court's grant of summary judgment in favor of Presbyterian.

{20} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and JAMES J. WECHSLER, Judges.