**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 28, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JOE BROCK, individually and on
behalf of all similarly situated
persons; SANDRA MCCULLOUGH,

Plaintiffs,

and

VINCE DIMARCO,

Plaintiff-Appellant,

v.

PRESBYTERIAN HEALTHCARE
SERVICES, INC.,

Defendant-Appellee.

No. 06-2192
(D.C. No. CV-99-189 MV/RHS)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **BRORBY**, and **McCONNELL**, Circuit Judges.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.  This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel.  It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Vince DiMarco appeals the district court's grant of summary judgment in favor of Presbyterian Healthcare Services, Inc. DiMarco brought suit against Presbyterian under 31 U.S.C. § 3730(h) of the Federal False Claims Act, alleging that Presbyterian retaliated against him for reporting its fraudulent activities. Specifically, DiMarco claimed that Presbyterian provided misleading, defamatory, and false employment information to a prospective employer, thereby causing him to lose a job offer. In its summary judgment ruling, the district court held that DiMarco granted Presbyterian absolute immunity from suit by signing a release that authorized the disclosure of his employment history. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Facts and Proceedings

DiMarco is a physician's assistant who formerly worked at one of Presbyterian's hospitals, Lincoln County Medical Center (LCMC). After learning that patients at LCMC were being billed for services they did not receive, DiMarco initiated a qui tam suit and resigned. That suit was eventually settled, and some three years later, DiMarco obtained a provisional offer of employment at another hospital, Gerald Champion Regional Medical Center (GCRMC). The job offer from GCRMC was contingent upon receipt of DiMarco's employment history at LCMC. To facilitate the transfer of this information, DiMarco signed releases authorizing the disclosure of his employment history to GCRMC.

After receiving DiMarco's information, GCRMC opted not to hire him. Its decision was based in part on a form entitled, "Hospital Affiliation Evaluation." Aplee. Suppl. App. at 45-46. On this form, Presbyterian disclosed, among other things, that "[DiMarco] terminated 9/30/00," failed to "continuously render[] the level of care established by [LCMC]," and "had to be counseled regarding patient relations with inadequate improvement." *Id.* Asserting that these representations were false, deliberately misleading, and in retaliation for his filing of the earlier qui tam suit, DiMarco sought relief under the False Claims Act's whistleblower provision, 31 U.S.C. § 3730(h).

The district court rejected DiMarco's contention, however, ruling that he consented to Presbyterian's disclosures by signing a broad Release and Immunity. The court held that by signing the release, DiMarco extended absolute immunity to Presbyterian and thereby relinquished his right to sue for retaliation. Additionally, because the language in the release was clear and unambiguous, the court declined to consider whether another release signed by DiMarco limited Presbyterian's immunity to disclosures made in good faith. Hence, the court granted summary judgment in favor of Presbyterian.

DiMarco subsequently filed this appeal. First, he claims he intended to release Presbyterian only for disclosures made in good faith. Second, he argues the district court improperly cited a case that has been superseded by statute. Third, he claims Presbyterian violated the implied covenant of good-faith and fair

dealing. And finally, DiMarco contends Presbyterian possessed at most a conditional privilege, which it lost by providing false information.

## II. Analysis

We review the district court's grant of summary judgment de novo to determine whether a genuine issue of material fact exists, viewing the record in the light most favorable to the non-moving party, DiMarco. *Campbell v. Gambro Healthcare, Inc.*, ___ F.3d ___, No. 06-3062, 2007 WL 706934, at *4 (10th Cir. Mar. 9, 2007).

## A.

DiMarco first claims the district court erred in concluding that Presbyterian was absolutely immune from suit. His position is essentially that he did not intend to be bound by the terms of the Release and Immunity, but rather by the terms of another release providing for only good-faith disclosures. This "good-faith" release, DiMarco argues, limited Presbyterian's immunity to good-faith disclosures.

Before addressing DiMarco's contention, however, we first examine New Mexico's law governing the disclosure of employment information. Courts in New Mexico have established that where an employee consents to the release of information, a former employer enjoys absolute immunity from suit. *Baker v. Bhajan*, 871 P.2d 374, 377-78 (N.M. 1994); *Gengler v. Phelps*, 589 P.2d 1056, 1057-58 (N.M. Ct. App. 1978). This rule is predicated on the notion that "[i]n the

-4-

business and professional world, public policy necessitates the disclosure of an employee's prior services when inquiry is made with the consent of the employee." *Gengler*, 589 P.2d at 1058. By contrast, where an employee has not consented to the release of his employment information, a former employer has a qualified privilege to release information "if for a proper purpose and to one having a legitimate interest in the statements." *Baker*, 871 P.2d at 378 (citation omitted). This qualified privilege attaches "to protect from liability those who, for the purpose of furthering the interest in question, give information which, without their knowledge or reckless disregard as to its falsity, is in fact untrue." *Gengler*, 589 P.2d at 1058 (quotation omitted).

Applying these principles to the case before us, we conclude that by signing the Release and Immunity, DiMarco granted Presbyterian absolute immunity from suit. The express terms of the release provide, "I extend absolute immunity to, release from any liability, including civil liability, and agree not to sue . . . any third parties . . . for any actions, recommendations, reports, statements[,] communications, or disclosures." Aplt. App. at 41. It continues, "I also expressly authorize said third parties to release this information to [GCRMC] and its authorized representative upon request." *Id.* Lastly, the Release and Immunity defines the term "third parties" to mean "all individuals from whom information has been requested." *Id.* This unambiguous, all-inclusive language denotes the broad scope of DiMarco's consent, *see Baker*, 871 P.2d at 377, and

-5-

clearly manifests his intent to grant absolute immunity to third parties such as Presbyterian.

Still, DiMarco insists that he intended to release Presbyterian only for disclosures made in good faith. To substantiate this claim, he offers the deposition testimony of GCRMC's medical staff coordinator, Diane Melendrez, and argues it shows that GCRMC used only the so-called "good-faith" release when obtaining information from other facilities. We need not consider this evidence because the Release and Immunity clearly and unambiguously manifests his intent. *See Montoya v. Villa Linda Mall, Ltd.*, 793 P.2d 258, 259 (N.M. 1990) ("absent an ambiguity, a court is bound to interpret and enforce a contract's clear language"). Nevertheless, our review of this testimony indicates that Ms. Melendrez used the good-faith release interchangeably with the Release and Immunity for purposes of convenience. Indeed, when asked if only the good-faith release would be provided to LCMC, Ms. Melendrez replied, "It's just more convenient for me to have a separate release that [applicants] sign so that I can just send it instead of having to copy this part of their application." Aplee. Suppl. App. at 49. Although she acknowledged that the good-faith release was "to be used to obtain information from other facilities," *id.*, she maintained that she has also used the Release and Immunity to do so as well. Construing this testimony in the light most favorable to DiMarco, we fail to see how it demonstrates his intent to limit Presbyterian's immunity, or his intent not to be bound by the terms

-6-

of the Release and Immunity. His argument ignores the plain provisions of that contract, as well as New Mexico's law granting employers absolute immunity where an employee consents to the disclosure of his employment information. Accordingly, we conclude that by signing the Release and Immunity, DiMarco granted Presbyterian absolute immunity for all disclosures concerning his employment history.

**B.**

Nevertheless, DiMarco challenges the district court's summary judgment ruling by arguing that the court relied on superseded authority. He argues that *Baker v. Bhajan*, 871 P.2d 374 (N.M. 1994), which was cited by the district court, was effectively overruled by New Mexico's employer immunity statute, N.M. Stat. § 50-12-1. To support this proposition, he points out that N.M. Stat. § 50-12-1 was enacted in the legislative session following *Baker*, demonstrating that New Mexico's legislature intended to overrule that decision.

N.M. Stat. § 50-12-1 is the statutory embodiment of New Mexico's common-law qualified privilege that attaches to good-faith disclosures. *See Davis v. Bd. of County Comm'rs*, 987 P.2d 1172, 1182 (N.M. Ct. App. 1999) ("The statute would appear to track much of the common-law privilege relating to defamation and good-faith comments in the employment context."); *see also* Lawrence L. Summers, *Wrongful Discharge: Contract, Public Policy, and Tort Claims*, 663 PLI/Lit 9, 110-11 (2001) (citing both N.M. Stat. § 50-12-1 and *Baker*

to explain that "many states have enacted legislation to shield employers from statements made in employee references," but "a signed release acts as a consent to statements made to prospective employers and holds them absolutely privileged"). The statute provides:

> When requested to provide a reference on a former or current employee, an employer acting in good faith is immune from liability for comments about the former employee's job performance. The immunity shall not apply when the reference information supplied was knowingly false or deliberately misleading, was rendered with malicious purpose or violated any civil rights of the former employee.

N.M. Stat. § 50-12-1.

As DiMarco correctly points out, N.M. Stat. § 50-12-1 was enacted in 1995, one year after *Baker* was decided. But nothing in the language of the statute indicates that it was intended to overrule *Baker* or its rule that absolute immunity attaches when the parties so contract. "A statute will be interpreted as supplanting the common law only if there is an explicit indication that the legislature so intended." *Sims v. Sims*, 930 P.2d 153, 158 (N.M. 1996) (citation omitted). Given the absence of any such indication, we decline to divine a legislative intent to overrule *Baker*.

## C.

DiMarco also contends Presbyterian violated the implied covenant of good faith and fair dealing by deliberately disclosing false and misleading information. "Generally, in the absence of an express provision on the subject, a contract

contains an implied covenant of good faith and fair dealing between the parties." *Kropinak v. ARA Health Servs., Inc.*, 33 P.3d 679, 681 (N.M. Ct. App. 2001) (citations omitted). But an implied covenant of good faith and fair dealing cannot override the express provisions of a contract. *Melnick v. State Farm Mut. Auto Ins. Co.*, 749 P.2d 1105, 1109-10 (N.M. 1988). Here, DiMarco signed a release extending absolute immunity to third parties such as Presbyterian for any disclosures, and the implied covenant of good faith and fair dealing cannot counteract those express terms. Additionally, the covenant is "breached only when a party seeks to prevent the contract's performance or to withhold its benefits from the other party." *Azar v. Prudential Ins. Co. of America*, 68 P.3d 909, 925 (N.M. Ct. App. 2003). As DiMarco admits, Presbyterian "was not a party to any of the releases." Aplt. Br. at 9. Consequently, it cannot be said to have violated an implied covenant of a contract to which it was not a party.

## D.

Finally, DiMarco argues that Presbyterian possessed no more than a conditional privilege, which it lost by making false disclosures. This argument is foreclosed, however, because we have already concluded that Presbyterian enjoyed absolute immunity.

### III. Conclusion

The judgment of the district court is AFFIRMED.

Entered for the Court

Michael W. McConnell
Circuit Judge